**Myrtice BATTLE et al., Plaintiffs,**

v.

**James D. CHERRY, Superintendent of DeKalb County School System, et al., Defendants.**

**Civ. A. No. 15228.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 2, 1972.

A. C. Latimer, Atlanta, Ga., for plaintiff.

Murphey Candler, Jr. and Gary M. Sams, Decatur, Ga., for James D. Cherry, Supt. & Members of DeKalb County Bd. of Ed.

Arthur K. Bolton, Atty. Gen., Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for Nix, Blackmon, Bolton, Davis, Burson, Hendricks, Griffin, Smith, Whaley, Rice, Kilpatrick, Stewart, Dewar, Neville and Huseman.

Before MORGAN, Circuit Judge, and EDENFIELD and FREEMAN, District Judges.

EDENFIELD, District Judge:

By this purported class action suit,[1] plaintiffs seek declaratory and in-

---

[1] Plaintiffs, who are black residents and freeholders of an independent school system and the parents of minor children attending an independent school system, seek to maintain this action as a class action "on behalf of themselves and all other black residents and freeholders of inde-pendent school districts in Georgia and all children attending an independent school system." (Plaintiffs' amendment to their complaint filed September 24, 1971.) We are of the opinion that the action should not be maintained as a class action. As will appear hereinafter, the

junctive relief respectively with regard to the constitutionality and enforcement of a portion of the Georgia Minimum Foundation Program of Education Act of 1964. Ga.Code Ann. § 32–601 et seq. This action is brought by plaintiffs in their dual capacities as taxpayers residing within the independent school district [2] of DeKalb-Atlanta [3] and as parents of minor children in the independent school system of DeKalb-Atlanta. The challenged portion of the Act (italicized below) and the statutory context within which it must be considered provide:

"Section 22. Calculation According to Local Financial Ability of Amount Required for Local Support of Minimum Foundation Program.

"(a) The State Board of Education shall calculate annually the amount of funds that each local unit of administration shall be required to raise to support its Minimum Foundation Program of Education. Effective for the 1971–72 school year, beginning July 1, 1971, and for each year thereafter, the amount of such funds to be raised by each local unit of administration shall be calculated by multiplying the formula .29 of 1% times the following:

\* \* \* \* \* \*

(2) For a county with independent school systems located within the county or counties, the formula shall be applied to the total equalized adjusted school property tax digest of the county or counties. For the 1971–72 and the 1972–73 school years, beginning July 1, 1971, *this amount shall be prorated between the systems by adding 33⅓ per cent to the county equalized adjusted school property tax digest of all property located within the territory of the independent school systems.*

. . .

\* \* \* \* \* \*

"(b) The amounts determined in accordance with the provisions of subsection (a) of this section shall be the amounts to be raised by each local unit of administration in support of the Minimum Foundation Program of Education. The amount of the costs of the Minimum Foundation Program of Education remaining after deducting the total amount to be raised by all local units of administration shall be paid entirely from State funds." (Ga. Laws 1971, pp. 574–576.)

We need not expound upon the labyrinths of complicated computations necessary for the implementation of the Minimum Foundation Program of Education Act. For our purposes here it is sufficient to note that the Act represents the efforts of the Georgia General

named plaintiffs are barred by res judicata from maintaining this action. Since plaintiffs' claim is barred, they do not adequately represent the interests of the class which they seek to represent. Furthermore, it should be noted that plaintiffs seek only to represent the black taxpayers of the independent school systems of Georgia. Allegations of disparity in fiscal treatment based on race are clearly irrelevant to the issues before the court. Therefore, the limited scope of plaintiffs' class is inappropriate for our consideration. *See* fn. 13, *infra*.

2. There are three types of local units of school administration under the Act: (1) county school systems, (2) independent school systems, and (3) area school systems. Ga.Code Ann. § 32–606. We are concerned here primarily with only the first two types of school systems. Generally each county constitutes a county

school system. Ga.Code Ann. § 32–901. The exception is for those school systems, the independent school systems, which were in existence prior to the Constitution of 1877. Ga.Code Ann. § 2–7201, Const. art. 7, § 10, par. 1.

3. DeKalb-Atlanta is defined by plaintiffs as that portion of the City of Atlanta which lies in DeKalb County. In actuality there is no independent school district of DeKalb-Atlanta. The City of Atlanta and its independent school system lie in portions of both Fulton and DeKalb Counties. Since the required local effort for participation in the Minimum Foundation Program of Education is prorated between the county and independent systems when a county contains an independent school system, the portion of the Atlanta school system lying in DeKalb County is treated as an independent system for the purposes of proration.

Assembly to provide a scheme of educational funding, which will insure a minimum educational program for all elementary and high school children in the State of Georgia. Since the funding of this program is shared by the state and local governments,[4] the Act specifically prescribes the method by which a county's required local effort is to be computed. Ga.Laws 1971, pp. 574–576.

By their action, plaintiffs challenge the method used to determine a county's required local effort in situations where a county contains an independent school system or systems within its territorial limits. Where no independent school system is involved, a formula, established by the Act, is applied to a county's total equalized school property tax digest[5] to determine that county's required local effort. However, where an independent school system lies within the territorial limits of a county, the tax responsibility for raising the county's required local effort is prorated between the taxpayers of the independent school system and the taxpayers of the county school system. This proration is achieved by adding $33\frac{1}{3}\%$ to that portion of a county's equalized adjusted school property tax digest representing property located within the territory comprising the independent school system; thereby causing the tax digest for the independent system to be weighted at $133\frac{1}{3}\%$, while the tax digest for property located within the territorial limits of the county school system is weighted at 100%. Plaintiffs alleged that the effect of this proration is to cause them, as taxpayers, to bear a proportionately higher tax burden than those taxpayers within the county school district. As parents, plaintiffs allege that their children are discriminated against in that they receive proportionately less benefits from the Minimum Foundation Educational Program than those children in the county school system, even though plaintiffs pay proportionately more for the program. It is the above disparity in fiscal treatment which plaintiffs contend violates equal protection rights.

■ Defendants have moved to dismiss for lack of jurisdiction over the subject matter.[6] While there is serious question as to whether plaintiffs' jurisdictional allegations are sufficient to enable them to maintain this action in their capacity as taxpayers,[7] plaintiffs may maintain the action as a civil rights suit under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 based upon allegations as parents that the Act arbitrarily discriminates against plaintiffs' children by reason of the fact that they receive proportionally less financial

---

4. As a general observation, the State provides roughly 80% and the local government provides 20% of the funds necessary for the educational program.

5. This digest is furnished annually to the State Board of Education by the State Auditor. Ga.Code Ann. § 32–622(B) (3), as amended in 1971.

6. In addition to the motions discussed in the body of the opinion, one other motion made by defendants should be noted. Defendants have moved to strike all allegations relating to race. Racial allegations are simply irrelevant to the issues before the court and need not be considered.

7. Plaintiffs, as taxpayers, rely on the federal question and civil rights jurisdiction in asserting their claims.

With regard to jurisdiction under 28 U.S.C. § 1331, it appears that the case "arises" under the Constitution because of plaintiffs' equal protection contentions. However, it further appears that the jurisdictional amount cannot be satisfied even through alleged. No individual taxpayer-plaintiff has a $10,000 controversy. Plaintiffs contend, however, that the jurisdictional amount is satisfied if the amount in controversy to either party exceeds $10,000. Determining the jurisdictional amount from this viewpoint is at least questionable. *See* Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724, 727 (5th Cir. 1962).

In response to plaintiffs' allegation of jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, defendants have raised the property rights-civil rights distinction seen so often in § 1983 cases. In tax assessment cases, § 1983 has been held to be inapplicable, since only property rights are involved. Bussie v. Long, 383 F.2d 766 (5th Cir. 1967).

benefits from the program established by the Act. *See* Van Dusartz v. Hatfield, 334 F.Supp. 870 (D.Minn., 1971).

Having determined that the court has jurisdiction over the controversy before it, at least insofar as plaintiffs allege that the Act discriminates against their children, the question becomes whether we can or should consider the merits to determine whether plaintiffs are entitled to the relief which they seek. This consideration of necessity causes us to examine defendants' motions and defenses which assert that res judicata and the anti-injunction provisions of 28 U.S.C. § 1341 bar plaintiffs' action. Not only do we believe that defendants' contentions are well taken, but we also firmly believe that the totality of the circumstances surrounding this action compel dismissal.

 Under the doctrine of res judicata, if a previous judgment is valid, final, and on the merits, it is an absolute bar in another case on the same cause of action between the same parties and their privies "not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.'" Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940), citing Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 (1930); Acree v. Air Line Pilots Ass'n, 390 F.2d 199 (5th Cir. 1968). Needless to say the doctrine must be judiciously applied. While it should not be applied so restrictively as to deny a party his day in court, neither should it be applied so liberally as to allow a party several opportunities to litigate the same claim. *See* Exhibitors Poster Exchange, Inc. v. National

Screen Service Corp., 421 F.2d 1313, 1316 (5th Cir. 1970). In the case at bar plaintiffs have simply already had their day in court.

In 1966 several actions were instituted in the Fulton and DeKalb County Superior Courts of Georgia challenging the constitutionality and application of the additional 33⅓% valuation provision of which plaintiffs now complain. On appeal the Georgia Supreme Court upheld the validity of the challenged provision and its applicability to the Atlanta and Decatur independent school districts. Ingram v. Payton, 222 Ga. 503, 150 S.E. 2d 825 (1966); Rice v. Cook, 222 Ga. 499, 150 S.E.2d 822 (1966). Instead of seeking review in the United States Supreme Court, plaintiffs in the state court followed the suggestion of the Georgia Supreme Court and took their cause to the Georgia General Assembly. In 1971 these legislative efforts proved partially successful and the Act was amended to gradually phase out over a four-year period the additional 33⅓% valuation applicable to the independent school systems.[8] Apparently not satisfied with a piecemeal victory, the action now under consideration was instituted.

In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court indicated approval of the criteria employed by Justice Traynor in Bernhard v. Bank of America Natl. Trust & Savings Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942), in considering whether an application of res judicata was appropriate. The criteria are stated as follows:

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in ques-

8. At the close of the 1974–75 school year, plaintiffs' cause will be moot. Under the 1971 amendment, the additional 33⅓% valuation applicable to property within the independent school district will continue for the 1971–72 and 1972–73 school years. In the 1973–74 school year the valuation is decreased to 22⅔% and further decreased for the 1974–75 school years to 11⅛%. Thereafter the valuation will be the same for both independent and county school systems. Ga.Code Ann. § 32–622 (a) (2), as amended in 1971.

tion? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" 402 U.S. at 323–324, 91 S.Ct. at 1440.

Under the circumstances of this case we find that these three questions must be answered in the affirmative. Clearly the 1966 decisions of the Georgia Supreme Court were adjudications on the merits. From our review of the decisions we are equally satisfied that the issues litigated in 1966 are the same issues which plaintiffs now seek to litigate here and that the parties involved in the 1966 litigation were substantially the same parties as are now before the court.

Plaintiffs attempt to avoid an application of res judicata by contending that the parties to this action are not the same parties as were before the state courts in 1966. Admittedly the named plaintiffs here are not identical in name with the named plaintiffs in the 1966 state court actions. Yet, in considering a possible application of res judicata it is substance rather than mere form which is controlling. Chicago, Rock Island & Pacific Ry. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed.2d 757 (1926); Acree v. Air Line Pilots Ass'n, *supra*. Identity of parties is not destroyed merely by changing the names of the parties. Rankin v. Florida, 418 F.2d 482 (5th Cir. 1969).

The determination of identity between litigants for the purpose of establishing privity is essentially a factual determination. Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958 (5th Cir. 1968). In the case at bar plaintiffs are taxpayers residing in an independent school system and the parents of children attending the independent schools of Atlanta. Each of the prior state cases was maintained by members of the Atlanta and Decatur Boards of Education in their capacity as board members. In the three Atlanta cases it was specifically noted by the Georgia Supreme Court that the plaintiff board

members also maintained those actions in their individual capacities as citizens and taxpayers. Rice v. Cook, *supra*, 222 Ga. at 500, 150 S.E.2d 822. While not clearly denominated as such, the 1966 litigation was in substance a representative suit by the independent school systems on behalf of their taxpayers and school children. In 1966 the independent school systems, by and through the same attorneys which represent plaintiffs in this action, argued in essence that they pay proportionally more for the Minimum Foundation Program and receive proportionally less than do the county school systems. This is merely another way of saying that independent school system taxpayers pay more and independent school children receive less than county taxpayers and county school children. Although the present argument of the taxpayer-parent plaintiffs comes more than five years after the prior adjudication and on the heels of an apparently unsatisfactory response from the Georgia General Assembly, it is identical to the argument made in 1966. Furthermore, mutuality plainly exists between the present plaintiffs and the 1966 plaintiffs. Had the 1966 plaintiffs prevailed, the present plaintiffs would have had no grievance to bring before this court. If the present plaintiffs prevail, the benefits of this action would inure to the 1966 plaintiffs and would in effect render the 1966 decision of the Georgia Supreme Court null and void. Under these circumstances, it is undeniable that the interests of the parties to this litigation and the 1966 state litigation and the causes which they espouse are so substantially identical as to compel us to give effect to res judicata.

In an attempt to demonstrate that there is no identity of the issues litigated, plaintiffs assert that the statute now under attack was not enacted until 1971 and therefore could not have been the subject of the 1966 state litigation. While factually this is true, the conclusion urged by plaintiffs does not necessarily follow. A comparison of the present additional 33⅓% valuation require-

ment applicable to the independent school systems with the proviso attacked in 1966 reveals that the two are substantially the same.[9]

We therefore find that the distinctions between this action and the 1966 state litigation are distinctions in form only, not substance. As such, the distinctions are insufficient to defeat defendants' claim of res judicata.

In addition, considerations of federalism dictate that we not reach the merits of plaintiffs' claims. Since the claims raised here have unreservedly been litigated in the state courts, they cannot be relitigated anew in a federal forum. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Furthermore, plaintiffs would in effect have this court review and reverse a decision of the Georgia Supreme Court. It is abundantly clear that this court cannot comply with plaintiffs' request. Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Such a request should have been directed to the United States Supreme Court in 1966.

Finally, we are prevented from reaching the merits of the controversy by the anti-injunction features of 28 U.S.C. § 1341, which dictates that:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

It has been recognized that Georgia provides such a plain, speedy and efficient remedy in the state courts. Kiker v. Hefner, 409 F.2d 1067 (5th Cir. 1969); Allanson v. Camp, 324 F.Supp. 734 (N.D.Ga.1971). In fact, privies of these plaintiffs pursued that remedy in 1966. The mere fact that their efforts were unavailing cannot mean that the prohibition of 28 U.S.C. § 1341 is inapplicable.

In attempting to avoid the prohibition of 28 U.S.C. § 1341 plaintiffs rely heavily on a case arising out of the Middle District of Florida in which a minimum foundation educational funding scheme was challenged and in which it was held that 28 U.S.C. § 1341 did not bar the action. Hargrave v. McKinney, 413 F.2d 320 (5th Cir. 1969); Hargrave v. Kirk, 313 F.Supp. 944 (N.D.Fla.1970), vacated on other grounds Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). In *Hargrave* the plaintiffs sought to obtain the right to have increased tax assessments for educational purposes. Such an action does not come within the prohibitions of 28 U.S.C. § 1341. However, in the instant case plaintiffs seek to strike down a state educational funding scheme which subjects them to higher tax assessments for educational purposes.[10] Plaintiffs request that we enjoin the enforcement of the state statute which forms the basis for these higher tax assessments. To comply with plaintiffs' request would be directly contrary to the prohibition of 28 U.S.C. § 1341. Having reached this conclusion, we must further conclude that declaratory relief is inappropriate. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

9. The proviso of the Act challenged in 1966 reads:
 "Provided, however, that the equalized adjusted school property tax digest of each independent school system located within a county shall be calculated on the basis of 133⅓ per cent. of the county equalized adjusted school property tax digest of all property located within the territory of the independent school system." Ga.Code Ann. § 32–622(B)(1).

10. While several of the named defendants in this action rely on the prohibition of 28 U.S.C. § 1341, Defendant Fulton County Board of Education, an intervenor, argues by brief that the Minimum Foundation Program of Education Act is not a tax assessment act, a tax levying act, or a tax collecting act. Nevertheless, in the opinion of the court the intimate interrelation between the challenged provision of the Act and the tax assessments complained of is inescapable.

One final note is necessary. Plaintiffs have directed the court's attention to three recent decisions declaring the educational funding scheme of various states unconstitutional. *Serrano v. Priest*, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971); *Van Dusartz v. Hatfield, supra*; *Rodriguez v. San Antonio Independent School District*, 337 F.Supp. 280 (W.D.Tex.1971). In essence these cases hold that the level of spending for a child's education may not be a function of wealth other than the wealth of the state as a whole. The effect of these decisions is to render unconstitutional an educational funding scheme which discriminates against the poor by making the quality of a child's education a function of the wealth of his parents and neighbors. In each of these cases the action was instituted on behalf of school children attending public schools in areas which had a comparatively low taxable wealth. Under the circumstances of this case, plaintiffs' reliance on the *Serrano* line of cases is misplaced.

■ Plaintiffs urge that we juxtapose the relative poverty of DeKalb-Atlanta with the relative wealth of DeKalb County. Such a comparison is both misleading and inappropriate. The area designated by plaintiffs as DeKalb-Atlanta is actually merely that portion of the City of Atlanta which lies in DeKalb County. As such, the school children of DeKalb-Atlanta are the beneficiaries of the taxable wealth of the City of Atlanta which is indisputably far greater than the taxable wealth of DeKalb County.[11] Consequently the amount expended for educational purposes per pupil is considerably higher in the independent school system of Atlanta than in the DeKalb County system.[12] Therefore, the instant case is in many respects actually the reverse of the situation presented in *Serrano*. Here plaintiffs are not "the poor" but are "the rich", who are in a position to benefit from their superior taxable wealth.[13] Furthermore, plaintiffs here do not attack the educational funding scheme as discriminatory in that it allows the rich to get richer while the poor get poorer. In essence these plaintiffs contend that the rich are not being allowed to get rich enough and the poor should be required to look to their own taxable wealth for educational funds.[14] Such a contention is not only inconsistent with the teachings of *Serrano*, but is contrary to the Georgia Supreme Court's view of the challenged provision of the Act. In *Ingram v. Payton, supra*, the Georgia Supreme Court indicated that the purpose and general effect of the challenged provision of the Act was to fairly apportion the wealth of the independent system so that the af-

11. Statistics in the record indicate that Atlanta has an adjusted tax digest of $4,505,606,000 or $50,512 wealth per pupil in average daily attendance. DeKalb County, on the other hand, has a tax digest of $2,370,610,000 or $29,057 wealth per pupil in average daily attendance.

12. Statistics indicate that per pupil expenditure in Atlanta is approximately $735 per pupil, while the comparable figure in DeKalb County is only $533 per pupil.

13. The fact that plaintiffs are "the rich" is only a further indication that plaintiffs are not an appropriate class representative for a class which is allegedly discriminated against on the basis of wealth.

14. Plaintiffs contend that the contested provision of the Act requires them to pay proportionally more for the Minimum Foundation Program while the county taxpayer pays proportionally less. Consequently, plaintiffs not only receive proportionally less in state aid but are deprived of certain funds raised locally which are presently applied toward satisfying what would be the county systems' required local effort, if the additional 33⅓ valuation were omitted. If plaintiffs prevailed, they would not only receive more state funds but would retain solely for local use funds raised locally, thereby allegedly encouraging a greater voluntary local effort. The county system, on the other hand, would receive less state funds and would be required to pay a greater share of the required local effort, thereby causing the county to allot a portion of what now appears as voluntary local effort toward satisfying the required local effort. This would presumably discourage voluntary local effort in the county. The probable result of a ruling in plaintiffs' favor would be to increase the amount of educational funds available to Atlanta and decrease the amount of funds available to DeKalb County.

fected county system was not discriminated against by reason of the fact that the county system must work from a base of relative lesser taxable wealth. Within the context of the instant action, the challenged provision of the Act to some extent would appear to remove the fiscal disparity which was condemned in *Serrano*. Therefore, it not only appears that *Serrano* is inapplicable to the facts of the case at bar [15] but that plaintiffs' claim of discrimination is without merit.[16]

For the foregoing reasons, it is ordered and adjudged that plaintiffs' action be dismissed.

---

*Serrano* indicates that a child's education cannot be solely a function of the wealth of his school district. To allow the Atlanta Independent School System to obtain more funds for educational purposes, while decreasing the funds available in an area of lesser taxable wealth, would be contrary to the principles announced in *Serrano*, insofar as it made the quality of a child's education a function of the taxable wealth of his school district.

15. We do not in any way mean to imply that Georgia's Minimum Foundation Program is either constitutional or unconstitutional under the principles announced in *Serrano*. That question is simply not before us.

16. Because of our view that this action is barred by res judicata, we do not formally reach the merits of plaintiffs' discrimination claim. (Plaintiffs' taxpayer claim appears to be without a jurisdictional basis in light of Bussie v. Long, *supra*.) However, if we were to reach the merits of plaintiffs' claim that their children are the victims of discrimination, it appears the claim is without merit in light of the relatively greater wealth of the Atlanta school system. If anything, it appears the position asserted by plaintiffs with regard to increasing their available educational funds would be contrary to the rulings in the *Serrano* line of cases.