**APPLING COUNTY et al.,**
**Plaintiffs-Appellants,**

v.

**MUNICIPAL ELECTRIC AUTHORITY**
**OF GEORGIA et al.,**
**Defendants-Appellees.**

**No. 79–1308.**

United States Court of Appeals,
Fifth Circuit.

July 23, 1980.

---

Durwood T. Pye, Pye, Groover & Dailey, Atlanta, Ga., Emmett P. Johnson, Baxley, Ga., for plaintiffs-appellants.

L. Clifford Adams, Jr., Atlanta, Ga., Thomas S. Gray, Jr., Savannah, Ga., Robert P. Edwards, Jr., James E. Joiner, Atlanta, Ga., for Municipal Electric Auth. of Ga.

Before GEE, FAY and RANDALL, Circuit Judges.

PER CURIAM:

On the basis of the order of the district court, a copy of which is appended hereto, the above cause is AFFIRMED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| APPLING COUNTY, | * | CIVIL ACTION |
| JAUNICE PRESLEY, | | |
| DAVID BURKE, | * | NO. 278–66 |
| BRICE BEECHER, | | |
| BEN WEAVER, | * | |
| NORMAN HOLLIS, and | | |
| JOHNNIE THORNTON, | * | |
| | | |
| Plaintiffs | * | |
| | | |
| VS. | * | |
| | | |
| MUNICIPAL ELECTRIC AUTHORITY | * | |
| OF GEORGIA and GEORGIA | | |
| POWER COMPANY | * | |
| | | |
| Defendants | * | |

## ORDER

The above-styled action involves the collection of *ad valorem* taxes in Appling County, Georgia. Plaintiffs, the County, itself, and individual citizens and taxpayers of Appling County, seek to impose *ad valorem* taxes on that portion of the Edwin I. Hatch Nuclear Plant located in Appling County, which is owned by the Municipal Electric Authority of Georgia, hereinafter (MEAG). To this end, plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201, alleging that MEAG's interest in Plant Hatch is in fact not tax-exempted "property" and that defendant, Georgia Power, should pay taxes on Plant Hatch in its entirety. Plaintiffs allege further that the defendants have in combination "misused" MEAG's statutory exemption from taxation and have thereby deprived plaintiffs of due process and equal protection of the law. Defendants are also said to have violated the contract impairment clause in Article I of the Constitution. Plaintiffs pray that the Court declare that the entirety of Plant Hatch is subject to taxation, that MEAG's 17.7% interest is not exempt from taxation, or alternatively that the 17.7% interest is not exempt from taxation for the payment of principal and interest on certain County bonds. The case is presently before the Court on defendants' motions to dismiss on various grounds.

The purpose of the Municipal Electric Authority of Georgia which was created by the Georgia Legislature, *Ga. Code Ann.* § 34B–401 et seq., is:

" . . . to acquire and construct, and operate and maintain or cause to be constructed, operated, and maintained electric generation and transmission facilities, and to take all other necessary or desirable action, in order to provide or make available an adequate, dependable, and economic supply of electric power and energy and related services for such of said political subdivisions of the State of Georgia as are hereinafter identified in section 34B–427, as may desire the same and, incidentally and so as to take advantage of economies of scale in the generation and transmission of electric power and energy, to other persons and entities."

*Ga. Code Ann.* § 34B–403. The property of the Authority is declared by statute to be public property and is statutorily exempted from taxation by the State or any of its political subdivisions, *Ga. Code Ann.* § 34B–406. Pursuant to *Ga. Code Ann.* §§ 34B–407, 34B–408 and 34B–427, MEAG purchased from Georgia Power a 17.7% undivided interest in the Hatch Nuclear Plant. MEAG supplies electrical power to 47 political subdivisions in Georgia, though not to Appling County.

■ Defendants move to dismiss on grounds, *inter alia*, that the Court lacks subject-matter jurisdiction of the action. Of course, the fact that the plaintiffs seek declaratory relief under 28 U.S.C. § 2201, does not absolve them of the necessity of bringing themselves within a jurisdictional statute. *See* 6A J. Moore, *Federal Practice* ¶ 57.23 (2d ed. 1974); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Plaintiffs attempt to bring themselves within the Court's federal question jurisdiction under 28 U.S.C. § 1331, and they also allege subject-matter jurisdiction under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343.

### I.

### 28 U.S.C. § 1341

■ Defendants argue that the Tax Injunction Act, 28 U.S.C. § 1341, deprives the Court of jurisdiction and requires dismissal of the complaint. The Act provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

28 U.S.C. § 1341. While a suit seeking declaratory relief can fall within the scope of § 1341's prohibition, *Coon v. Teasdale,* 567 F.2d 820, 821 n.2 (8th Cir. 1977), under Fifth Circuit precedents, § 1341 is inapplicable to the present action because it seeks

not to inhibit the collection of taxes, but to require the collection of additional taxes. *See Hargrave v. McKinney*, 413 F.2d 320 (5th Cir. 1969). *See also Bland v. McHann*, 463 F.2d 21, 26 n.21 (5th Cir. 1972), *cert. denied* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973); *Battle v. Cherry*, 339 F.Supp. 186 (N.D.Ga.1972).

Apart from 28 U.S.C. § 1341, a judicially created doctrine of abstention appertains to cases in federal court involving state tax administration. *See, e.g., Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). However, this judicial abstention doctrine has also been held inapplicable where the suit seeks to require *additional* taxes. *Hargrave v. Kirk*, 313 F.Supp. 944 (M.D. Fla. 1970) (three-judge court), *reversed on other grounds sub nom., Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). *Accord Cornelius v. Benevolent Protective Order of Elks*, 382 F.Supp. 1182 (D. Conn. 1974).

## II.

### 28 U.S.C. § 1331

■ Defendants cite *L & N R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed.2d 126 (1908), for the proposition that a federal district court has subject-matter jurisdiction under § 1331 only when plaintiff's statement of his own cause of action shows that it is based on federal law. *See also Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). Defendants argue that there is no federal question jurisdiction under § 1331 because the plaintiffs' Constitutional claims are alleged only in anticipation of a defense which the defendants will assert, *i.e.*, MEAG's statutory exemption from taxation. The allegations that Georgia Power did not really transfer any taxable "proper-

ty" to MEAG when it conveyed the 17.7% interest in Plant Hatch, and that the defendants have "misused" MEAG's statutory tax exemption are clearly based on state law. However, plaintiffs' Constitutional claims cannot be characterized as merely anticipating the defense of MEAG's statutory exemption. Plaintiffs seek to impose *ad valorem* taxes on Plant Hatch in its entirety, alleging that under the *status quo*, they are being deprived of their constitutional rights of due process and equal protection. *Compare Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

There remains, however, the question of whether the Constitutional claims are so insubstantial as to defeat jurisdiction. *Compare Hagans v. Lavine*, 415 U.S. 528, 538–539, 94 S.Ct. 1372, 1380, 39 L.Ed.2d 577 (1974). The Court concludes that the question must be answered in the affirmative and that plaintiffs' Constitutional claims can fairly be characterized as insubstantial. From plaintiffs' complicated and lengthy pleadings, their Constitutional claims can be distilled to the following:

1. The fact that the County cannot tax the 17.7% of Plant Hatch which was conveyed to MEAG, coupled with the fact that MEAG's share of the electric power generated at Plant Hatch is transmitted to political subdivisions other than Appling County deprive plaintiffs of equal protection or due process, or both. (Under *Ga. Code Ann.* § 34B–427, MEAG is authorized to contract to provide an electric power supply only with those political subdivisions of the state which " . . . on the date this Chapter becomes law own and operate an electric distribution system. Appling County is not among those political subdivisions.) [1]

---

1. Plaintiffs emphasize that they are *not* challenging the constitutionality of MEAG's statutory exemption itself. According to plaintiffs, the exemption is not properly applicable to MEAG's 17.7% interest in Plant Hatch. Plaintiffs contend that it is the *application* of the exemption in this situation which deprives them of due process and equal protection. As discussed above, the contentions that the ex-

emption has been "misused" and that MEAG's interest in Plant Hatch is not tax-exempt property, are governed by state law. But whether the plaintiffs challenge the statutory tax exemption on its face, or only the operation of the exemption in this particular situation, the federal Constitutional question, as discussed below, is the same, *i.e.*, is the exemption rational or is it "palpably arbitrary?"

2. The plaintiffs claim that their inability to tax Plant Hatch in its entirety constitutes a violation of the contract impairment clause because the County must pay the principal and interest on certain outstanding bonds from *ad valorem* proceeds, previously pledged to bond retirement.

The insubstantiality of plaintiffs' Constitutional claims is evident from well established Supreme Court precedents:

"This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation.

\*　　\*　　\*　　\*　　\*　　\*

"A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subject to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

*Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937). The Supreme Court expounded on this principle in the recent case of *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359–360, 93 S.Ct. 1001, 1004, 35 L.Ed.2d 351 (1973), a case involving an Illinois tax scheme which imposed a personal property tax on corporations, but not on individuals:

"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. *Harper v. Virginia Board of Elections,* 383 U.S. 663, 666, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation. As stated in *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526–527, 79 S.Ct. 437, 440, 3 L.Ed.2d 480:

'The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of exercise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value.'

"In that case we used the phrase 'palpably arbitrary' or 'invidious' as defining the limits placed by the Equal Protection Clause on state power."

See *also Desco Products Caribbean, Inc. v. Government of Virgin Islands,* 511 F.2d 1157, 1160 (3d Cir. 1975); *Byrd v. Blue Ridge Rural Electrical Cooperative, Inc.,* 215 F.2d 542 (4th Cir. 1954), *cert. denied,* 348 U.S. 915, 75 S.Ct. 295, 99 L.Ed. 717 (1955); *South Carolina Power Co. v. South Carolina Tax Commission,* 52 F.2d 515 (E.D. S.C. 1931), *aff'd,* 286 U.S. 525, 52 S.Ct. 494, 76 L.Ed. 1268 (1932).

The Fifth Circuit has recently held that: " . . . a complaint which alleges the existence of a federal question establishes jurisdiction, so that a dismissal for lack of jurisdiction is appropriate only when the court decides that a claim is frivolous or insubstantial, i.e., a claim that has no plausible foundation, or when the court concludes that a prior Supreme Court decision clearly forecloses the claim. See *Bell v. Health-Mor, Inc.,* 549 F.2d 342, 344 (5th Cir. 1977); *Hilgeman v. National Ins. Co.,* 547 F.2d 298, 300 (5th Cir. 1977)."

*Olivares v. Martin*, 555 F.2d 1192, 1195 (5th Cir. 1977). Here, under standards well-established by the Supreme Court, MEAG's statutorily conferred exemption is valid unless irrational and ". . . when subject to judicial scrutiny [the exemption] must be presumed to rest on [a rational] basis if there is any conceivable state of facts which would support it." *Carmichael v. Southern Coal & Coke Co., supra.* Under this standard, the plaintiffs' Constitutional claims are clearly insubstantial, and lack any plausible foundation. The Georgia statutes creating and governing MEAG, *Ga. Code Ann.* § 34B–401 *et seq.*, are patently rational and are free from arbitrary discrimination.[2]

A strikingly similar case is *Blackman v. City of Big Sandy, Texas*, 377 F.Supp. 771 (E.D.Tex.1974), *aff'd*, 507 F.2d 935 (5th Cir. 1975). In that case, the owners of a service station challenged on Constitutional grounds a zoning ordinance which prohibited the sale of alcoholic beverages within 300 feet of any hospital, church or school. The standard for determining the Constitutional validity of the zoning ordinance was the same standard applicable to the tax exemption in the instant case, *i.e.*, is the ordinance rational or is it arbitrarily discriminatory? The district court held that the ordinance was clearly not arbitrary, and it dismissed the complaint, finding that no substantial federal question was presented. The Fifth Circuit affirmed.

The plaintiffs' contention under the Contract Clause of Article I, Section X, of the Constitution ["No state shall . . . pass any . . . law impairing the obligation of contracts"] is frivolous. Plaintiffs allege in Paragraph 31 of the complaint that from 1966 to 1974, Appling County has issued various general obligation bonds for hospital, courthouse, and school purposes. Plaintiffs allege further that:

"These bonds are all now in the hands of purchasers who acquired the bonds in good faith, relying upon the contracts which resulted from the issuance and sale of the bonds, including the contract obligation which bound all the taxable property of Appling County for the payment of the principal and interest on said bonds according to the laws then of force. * * The actions of defendants whereby they undertake to exempt from taxation for the payment of said bonds the aforesaid 17.7% interest is in derrogation of the aforesaid contract. It is violative of the Constitution of the United States, Article I, Section X, providing that no State shall pass any law impairing the Obligation of Contracts, for the Authority acts as an instrumentality of the State of Georgia, pursuant to said Act of 1975 creating it, and Georgia Power Company confederates, combines and contracts to such unlawful end. So much of said Act of 1975, approved March 19, 1975 (Georgia Laws 1975, p. 107) as in Section 6 thereof provides that 'all of the property * of the Authority * are declared to be nontaxable for any and all purposes by the State or any of its political subdivisions'; so far as the same applies to taxation for the payment of the principal and interest on said bonds according to the tenor thereof, is null and void as violative of said Article I, Sec. X, of the Constitution of the United States, for the reason that there would be an impairment of the Obligations of Contracts if tangible property in Appling County subject to taxation for the payment of said bonds were exempted from

2. The Supreme Court of Georgia has so held. *See Thompson v. Municipal Electric Authority of Georgia*, 238 Ga. 19, 231 S.E.2d 720 (1976). *Ga. Code Ann.* § 34B–408(j) allows any Georgia citizen to become a party to proceedings involving the validation of the Authority's revenue bonds. In *Thompson, supra*, a citizen intervened in such proceedings and maintained essentially the same positions which plaintiffs take in the case *sub judice*, though the case did not involve Plant Hatch specifically. The Supreme Court rejected these arguments under the state Constitution. In this context, the uniformity provisions of the Georgia Constitution are substantially similar to the equal protection concept of the Fourteenth Amendment to the United States constitution. *See* 71 Am.Jur.2d, *State and Local Taxation* § 158 (1973). This Court does not base its ruling on the Georgia decision and does not hold that the *Thompson* case has any *res judicata* effect on plaintiffs herein, who were not parties to that litigation. *But Compare Battle v. Cherry*, 339 F.Supp. 186, 191–193 (N.D.Ga.1972) for a case in which *res judicata* principles were applied on facts not greatly dissimilar from these.

said taxation after their issuance and sale, . . . ."

Paragraph 31 of Plaintiffs' Complaint. The plaintiffs' theory seems to be that all property which was "taxable property" when the bonds were issued, must remain in the County tax base, at least for the payment of principal and interest on the aforementioned bonds.

Generally, when a political subdivision is authorized to contract and to exercise the power of taxation to meet its contractual obligations, the power to tax must continue until the obligations are satisfied. *See Louisiana v. Pilsbury*, 105 U.S. 278, 26 L.Ed. 1090 (1882); *Louisiana ex rel. Hubert v. New Orleans*, 215 U.S. 170, 30 S.Ct. 40, 54 L.Ed. 144 (1909); *W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935). But not every impairment of a contract violates the Contract Clause. That Clause does not prohibit a state from repealing or amending statutes generally or from enacting legislation with retroactive effects. The strictures of the Contract Clause must be reconciled with the "essential attributes of sovereign power." *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). *See also United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Here, the exemption of 17.7% of Plant Hatch from taxation certainly reduces the *ad valorem* taxes which the County takes in, but there is no allegation that this reduction seriously impairs the County's ability to meet its obligations on the bonds.

Moreover, the complaint alleges that the bonds are held by unspecified good faith purchasers. The Court concludes that no plaintiff has standing to challenge MEAG's exemption on the basis that it impairs the rights of the holders of County bonds. *Compare Warth v. Seldin*, 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

The claims of the individual plaintiffs cannot be based on federal question jurisdiction under 28 U.S.C. § 1331 for the additional reason that they fail to allege that their individual claims exceed $10,000. The complaint does allege that if the County could tax MEAG's interest in the Plant, it could collect an additional $831,550 in *ad valorem* taxes. The impact that this would have on individual taxpayers is unclear. Indeed, unless the millage rates were reduced there would be no apparent impact on individual taxpayers. Defendants note correctly that each plaintiff must meet the amount in controversy requirement. These claims are "several and distinct." *Alvarez v. Pan American Life Insurance Co.*, 375 F.2d 992 (5th Cir. 1967), *cert. denied* 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967). *See also Schreiber v. Lugar*, 518 F.2d 1099 (7th Cir. 1975); *Buckingham v. Lord*, 326 F.Supp. 218 (D.Mont.1971); *Allanson v. Camp*, 324 F.Supp. 734 (N.D.Ga.1971). *See generally*, Annot., 2 A.L.R.Fed. 855, 868 (1969).

Citing *Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923), MEAG argues that the County's claims should also be dismissed because the County has no standing to invoke the federal Constitutional guarantees of due process and equal protection against an enactment of the State of Georgia. The Court finds this argument persuasive. Plaintiffs allege that by virtue of the fact that the County cannot impose *ad valorem* taxes on MEAG's 17.7% interest of Plant Hatch, it is deprived of due process and equal protection. This allegation cannot be construed as anything other than a constitutional challenge to MEAG's state-conferred tax exemption, at least as applied to MEAG's interest in Plant Hatch. In *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254–1255 (5th Cir. 1976), the Court explained:

"Ever since the Supreme Court's landmark decision in *Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), it has been apparent that public entities which are political subdivisions of states do not possess constitutional rights, such as the right to be free from state impairment of contractual obligations, in the same sense as private corporations or individuals. 17 U.S. (4 Wheat.) at 660–61, 4 L.Ed. at 664.

Such entities are creatures of the state, and possess no rights, privileges or immunities independent of those expressly conferred upon them by the state. Id.; *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015, 1020 (1933); see *Railroad Commission v. Los Angeles R. R.,* 280 U.S. 145, 156, 50 S.Ct. 71, 73–74, 74 L.Ed. 234, 329 (1929); *Risty v. Chicago, R. I. & P. R. R.,* 270 U.S. 378, 390, 46 S.Ct. 236, 241, 70 L.Ed. 641, 651 (1926); *City of New York v. Richardson,* 2 Cir. 1973, 473 F.2d 923, 929, cert. denied sub nom. *Lavine v. Lindsay,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). Thus, in *Trenton v. New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923), the Supreme Court held that a city which had obtained its water resources by acquiring a private water company through proper exercise of its proprietary authority could not assert the right to freedom from impairment of contractual obligations because of the difference in the relation of private and public entities to the state. In contrast to private individuals and entities, municipal corporations have repeatedly been denied the right to challenge state legislation allegedly violative of the Federal Constitution. *Williams v. Mayor and City Council of Baltimore,* supra; *Pawhuska v. Pawhuska Oil & Gas Co.,* 250 U.S. 394, 398, 39 S.Ct. 526, 528, 63 L.Ed. 1054, 1057 (1919) ("as respects grants of political or governmental authority to cities, towns, counties, and the like the legislative power of states is not restrained by the contract clause of the Constitution"); *City of New Orleans v. New Orleans Water Works Co.,* 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891)."

The County argues that it *is* a person within the meaning of the Fourteenth Amendment:

"Nor shall any state deprive any person of life, liberty, or property without due process of law nor deny to any person . . . the equal protection of the laws."

The County relies on the Supreme Court's recent decision in *Monell v. Department of Social Services of the City of New York,*

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Court held that a municipality was a "person" within the meaning of 42 U.S.C. § 1983. However, *Monell* is inapposite to the present controversy. A County or City's lack of standing to challenge state legislation on federal Constitutional grounds is based on the rationale that:

"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal Constitution which it may invoke in opposition to the will of its creator."

*Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933).

The Supreme Court's holding in *Monell* is that by enacting 42 U.S.C. § 1983, Congress intended to make municipalities and other political subdivisions amenable to suits brought under that section. The *Monell* decision does not call into question the principle that a city or county cannot challenge a state statute on federal Constitutional grounds.

### III.

### 42 U.S.C. § 1983 and 28 U.S.C. § 1343

■ There is no amount in controversy requirement under § 1983, but this statute restricts only "state action." Despite plaintiffs' conclusory allegations of concerted, combined and conspiratorial actions by the two defendants, with respect to their constitutional claims, plaintiffs do not sufficiently allege that defendant, Georgia Power Company, has acted under color of state law. *See generally, Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The state action requirement is satisfied as to defendant MEAG, an official arm of the State.

■ However, the attempt to base jurisdiction on § 1343 also fails as to defendant MEAG because, as discussed above, the plaintiffs' Constitutional claims are patently insubstantial. This lack of substantiality undermines § 1343 jurisdiction as well as § 1331 jurisdiction. *See, e. g., Howard v.*

*State Department of Highways of Colorado,* 478 F.2d 581 (10th Cir. 1973).

In sum, the Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is hereby granted in favor of both defendants. The clerk is directed to enter an appropriate judgment.

So Ordered, this 4th day of January, 1979.

/s/ Anthony A. Alaimo
Chief Judge, United States District Court, Southern District of Georgia