In re KING MEMORIAL HOSPITAL, INC. and Florida Hospital Group, Inc., Debtors.

HIALEAH HOSPITAL, INC., Plaintiff,

v.

DEPARTMENT OF HEALTH AND RE-HABILITATIVE SERVICES, State of Florida, Robert A. Schatzman and Justin P. Havee Co-Trustees of King Memorial Hospital, Inc., and Florida Hospital Group, Inc., Miami Capital Development, Inc., and Republic Health Corporation, Defendants.

Bankruptcy No. 79–01220–BKC–SMW.
Adv. No. 84–0284–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 3, 1984.

See also, Bkrtcy, 28 B.R. 115.

Byron B. Mathews, Jr., McDermott, Will & Emery, Tallahassee, Fla., for Hialeah Hosp., Inc.

John Flowers, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for Republic Health Corp.

Gary C. Matzner, Hayt, Hayt & Landau, Miami, Fla., for co-trustees.

Robert A. Schatzman, Schatzman & Schatzman, Coral Gables, Fla., Co-Trustee.

James M. Barclay, Tallahassee, Fla., for Dept. of Health and Rehabilitative Services.

J. Michael Fitzgerald, Wood, Lucksinger & Epstein, Miami, Fla., Counsel to Republic Health Corp.

Ronald J. Cohen, Paul, Landy, Beiley & Harper, P.A., Miami, Fla., for Miami Capital.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

Plaintiff, Hialeah Hospital, Inc. ("Hialeah"), is a Florida not-for-profit corpora-

tion which owns and operates a 411-bed acute care hospital located in Hialeah, Dade County, Florida. Defendants, Robert A. Schatzman and Justin P. Havee, Co-Trustees of King Memorial Hospital ("Co-Trustees"), are the duly qualified and acting Co-Trustees of King Memorial Hospital, Inc. and Florida Hospital Group, Inc., debtors in Chapter 7 proceedings. Defendant, Department of Health and Rehabilitative Services ("HRS"), is an administrative agency of the State of Florida charged with the responsibility of enforcing and administering the Florida Certificate of Need law. HRS has the sole and exclusive responsibility for determinations as to the existence, preservation, and relocation of exemptions from the Florida Certificate of Need law. Defendant, Republic Health Corporation ("Republic"), is a Delaware corporation with its principal place of business in Dallas, Texas. Republic entered into an Offer to Purchase with the Co-Trustees and Miami Capital Development, Inc. ("Miami Capital") to purchase the real property, improvements, and other personal property, including a certain exemption from the Florida Certificate of Need law (the "Exemption") for the construction of a 126-bed general acute care hospital, from the estate in bankruptcy of King Memorial Hospital, Inc. ("King"). Defendant Miami Capital is a Florida corporation with its principal place of business in Dade County, Florida. Miami Capital claims an interest in the property of the estate.

Plaintiff Hialeah has filed a three count adversary complaint in this Court seeking declaratory and injunctive relief against HRS, the Co-Trustees, Republic, and Miami Capital, contending that it had a right to notice and to be heard with regard to the sale and relocation of the site for construction of the 126-bed general acute hospital to be built pursuant to the Exemption. Defendants contend that this court had the authority to authorize the sale and relocation of the Exemption by virtue of the provisions of the Bankruptcy Code and the laws of the State of Florida and that HRS, acting as legal representative of the people, determined that the Exemption could be transferred and relocated within certain parameters and acted adequately, sufficiently, and in accordance with law in reaching a court approved settlement with the Co-Trustees.

The above styled and numbered adversary proceeding was heard by the Court on August 7, 1984, and adjourned to August 28, 1984, at which time the trial was concluded. After considering all of the evidence, arguments, and briefs of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. King, a 27-bed hospital facility located in Opa Locka, Florida, filed for relief under Chapter 11 of Title 11 of the United States Code on October 2, 1979. Shortly thereafter, on November 8, 1979, Robert A. Schatzman and Justin P. Havee were appointed Co-Trustees. On March 2, 1982, the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.

2. Prior to the institution of the Chapter 11 proceeding, in December of 1973, King was advised by letter from the HRS that King qualified for an Exemption from the Florida Certificate of Need law relating to the construction of a hospital. Five years later, in July of 1978, King was notified by HRS that the Florida Certificate of Need law had been amended to repeal future exemptions and that King's Exemption would be preserved if it engaged in "physical and continuous" construction of a hospital by July, 1979.

3. On November 30, 1979, HRS notified the Co-Trustees of King that HRS had determined that King had forfeited the Exemption and gave King a period of time during which to request an administrative hearing pursuant to the Florida Administrative Procedures Act. Whereupon, the Co-Trustees filed an adversary proceeding in this Court against HRS seeking injunctive relief to restrain HRS from entering any order revoking the Exemption. On February 14, 1980, this Court enjoined HRS from entering any orders regarding the Exemption. The Court entered its order in

the adversary proceeding on June 24, 1980 providing that the automatic stay of Section 362 of the Bankruptcy Code prevented HRS from using administrative proceedings to revoke the Exemption. *In Re King Memorial Hospital, Inc.,* 4 B.R. 704 (Bankr.S.D.Fla.1980). On April 30, 1982, this Court determined that the Exemption which was at issue was preserved and that the Co-Trustees were authorized to construct a health care facility and were accordingly to submit a construction schedule. *In Re King Memorial Hospital, Inc.,* 19 B.R. 885 (Bankr.S.D.Fla.1982). Such order is now final.

4. During the course of these Chapter 7 proceedings, the Co-Trustees have made a diligent and deliberate effort to dispose of the estate's interest in the real and intangible property known as King Memorial Hospital, Inc. including the Exemption. The Co-Trustees offered the assets for sale to thirty-three proprietary hospital companies situated in the United States, advertised the assets for sale in the Miami Herald and the Wall Street Journal, and made additional private inquiries. The Court finds that the Co-Trustees utilized due diligence in seeking a purchaser for the assets of the estate.

5. The Co-Trustees were unable to sell the Exemption in its original location because it was not economically feasible to construct a hospital on the original site or to profitably operate the facility located thereon. Recently civil disturbances occurred in the area where the site is located. The area has been, and continues to be, economically depressed. The original construction site does not have sufficient land available to make a hospital facility economically viable.

6. On May 23, 1983, the Co-Trustees filed an adversary proceeding against HRS seeking a declaratory judgment determining the Co-Trustees' rights to construct a 126-bed hospital facility at a relocated site generally within the Opa Locka area.

7. Neither the Exemption nor this Court's order of April 30, 1982 providing that the Exemption was preserved limit the hospital site to a specific location.

8. HRS and the Co-Trustees subsequently entered into a settlement of the May 23, 1983 adversary proceeding. On November 28, 1983, after notice pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules of Procedure, this Court entered its order approving the Joint Application for Settlement between the Co-Trustees and HRS which provided in part that HRS approved of King's transfer of the Exemption to defendant Republic. The settlement and order approving it recognized Republic had sufficient resources and the necessary commitment to serve the needs of the Opa Locka community and that HRS considered Republic to have the same status and rights as a party holding a Certificate of Need to construct a 126-bed general acute care hospital at a relocated site. In the settlement agreement HRS acknowledged that this Court had exclusive jurisdiction to issue any order with respect to the sale of the Exemption to Republic.

9. On December 16, 1983, this Court entered its Order approving a sale of the real property and improvements to Republic for the sum of $1,000,000.00 and providing that Republic would acquire the Exemption.

10. On January 12, 1984, the Co-Trustees accepted Republic's Offer to Purchase the real property, improvements, and other personal property including the Exemption.

11. Republic's obligation to close the transaction pursuant to the Offer to Purchase is contingent upon among other things, its ability to relocate on a new site.

12. The Exemption is the major asset of the estate.

13. In the usual course of its administration of the Florida Certificate of Need law and exemptions therefrom, HRS has interpreted Florida law as permitting projects which were exempted prior to July 1, 1979 to go forward without Certificate of Need review if the projects were under physical and continuous construction pursuant to final construction plans approved by the Office of Licensure and Certification by July 1, 1979.

14. It is the policy of HRS in the usual course of its administration of the Florida Certificate of Need law and exemptions therefrom to permit an exemption to be moved to a different site so long as HRS approves the exemption for the general geographic area within which it is to be relocated.

15. The Court finds there is no credible evidence to support Hialeah's allegations that any direct or indirect influence was exerted upon HRS to enter into the settlement with the Co-Trustees.

16. The Court finds no facts which establish that Hialeah had any right, privilege or immunity secured by the Constitution or laws of the United States in connection with the Exemption, its transfer, sale or relocation.

17. The court finds there is no credible evidence to support Hialeah's allegations that Hialeah was deprived of any right, privilege or immunity secured by the Constitution or laws of the United States.

18. Where appropriate the foregoing Findings of Fact shall also be considered to be Conclusions of Law.

## CONCLUSIONS OF LAW

1. This adversary proceeding is a Core Proceeding inasmuch as it involves matters concerning the administration of the Debtor's estate; the sale of property of the estate other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and, affects the liquidation of the assets of this estate and does not involve a personal injury tort or a wrongful death claim. 28 U.S.C. § 157(b)(2)(A), (N), (O).

2. The resolution of this proceeding requires consideration of Title 11 of the United States Code and the laws of the State of Florida. It does not require consideration of laws, other than Title 11, regulating organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d).

3. This Court has jurisdiction of the subject matter of this litigation and of all parties before it.

4. King holds an Exemption from the Florida Certificate of Need law. Florida Statutes Annotated, § 381.497.

5. The repeal of the Exemption from the Florida Certificate of Need Law, Chapter 78–194, Laws of Florida, did not affect King's Exemption.

6. King's Exemption precludes any requirement for Certificate of Need review or a Certificate of Need because it is a total exemption. Inasmuch as King's Exemption was preserved and currently exists, Republic's acquisition of the Exemption does not necessitate either Certificate of Need review or a Certificate of Need. *Palmetto General Hospital, Inc. v. State Dept. of Health and Rehabilitative Services*, 333 So.2d 531 (Fla. 1st D.C.A.1976).

7. The statute granting the Exemption is clear and unambiguous and must be construed according to its plain meaning. *Bingham v. Manson*, 363 So.2d 370 (Fla. 1st D.C.A.1978).

8. HRS' statutory interpretation of the Florida Certificate of Need law and the exemption therefrom must be accorded great weight. *Daniel v. Florida State Turnpike Authority*, 213 So.2d 585 (Fla. 1968).

9. The rights which plaintiff Hialeah seeks to enforce in this adversary proceeding are identical to the rights of the public which are protected and enforced by HRS under the Florida Certificate of Need law and exemptions therefrom.

10. Under Florida law, plaintiff Hialeah does not have any right or remedy relating to the construction of a hospital by a third party operating under an exemption from the Florida Certificate of Need law which are distinct from, or supplemental to, the rights of the public protected and enforced by HRS.

11. The final judgment approving the settlement in the prior action between the Co-Trustees and HRS is binding upon plaintiff Hialeah because HRS' involvement and position in the earlier suit adequately represented any interest which Hialeah

may assert. *In Re Engelhard and Sons Co.*, 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 414 (1914); *Southwest Airlines Co. v. Texas Int'l. Airlines*, 546 F.2d 84 (5th Cir.1977); *Berman v. Denver Tramway Corp.*, 197 F.2d 946 (10th Cir.1952); *Battle v. Cherry*, 339 F.Supp. 186 (N.D.Ga.1972).

12. A judgment should be entered denying the plaintiff Hialeah all relief which it seeks in this adversary proceeding.

13. Where appropriate the foregoing Conclusions of Law shall also be deemed to be Findings of Fact.