COUNTY COUNCIL OF MONROE COUNTY, Monroe County Commissioners, Auditor of Monroe County Donald E. Wagner, Norman S. Anderson, Morris E. Binkley, Winfield Jacobs, John W. Rogers, Ronald E. Wever, Rodney E. Young, William Hanna, Philip Rogers, Warran Henegar and John W. Davis, Defendants-Appellants,

v.

STATE of Indiana on the relationship of MONROE COUNTY BOARD OF PUBLIC WELFARE and County Department of Public Welfare of Monroe County, Plaintiffs-Appellees.

No. 1–1279A370.

Court of Appeals of Indiana, First District.

April 15, 1980.

Thomas A. Berry, Barbara B. Benson, Berry, Smith & Bridges, Bloomington, for defendants-appellants.

Betty K. Mintz, Bloomington, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendants-appellants County Council of Monroe County, et al. (Council) appeal a declaratory judgment of the Monroe Superior Court III apprising the Council of the statutory obligation to amend its salary ordinance and thereby permit the award of merit salary increases to the employees of plaintiff-appellee County Department of Public Welfare of Monroe County (Department).

We affirm.

## FACTS

On July 1, 1978, pursuant to statutory requirements, the Department submitted its 1979 budget[1] and statement[2] of proposed salaries to the Council. The Department's statement requested $462,196 for 42 employees; other costs were estimated at $1,080. Thus, a total appropriation of $463,276 was requested for the 100 Personal Services Account.[3]

In its statement, the Department properly listed its employees according to their

1. Ind.Code 12–1–11–1 provides:
   "There is hereby created, in each county in this state, a fund which shall be known as the county welfare fund, which shall be raised by a separate tax levy, in addition to all other tax levies now authorized by law, which shall be levied annually by the county council,.on all of the taxable property of such county, in an amount which shall be necessary to raise the portion of such fund which the county is obliged to raise to pay the respective items, awards, claims, allowances, assistance and the other expenses as set forth in the annual budget, as provided in section ninety-nine of this act . . ... The county welfare fund is hereby made available for the purposes of paying such expenses and obligations as shall be set forth in the annual budget, as submitted and approved."
   Ind.Code 12–1–11–2 provides:
   "On or before the Wednesday following the first Monday in July, 1936, and annually thereafter, the county director shall compile and the county board shall adopt a budget, which shall be in two parts, designated as Part 1 and Part 2, and which shall be in such form as shall be prescribed by the state board of accounts. Part 1 of such budget shall contain an estimate of the amount of money which will be needed by the county department, during the fiscal year next ensuing, to defray the expenses and obligations incurred and which will be incurred, by the county department, in the payment of old age assistance, assistance to dependent children, child welfare services and assistance for crippled children. Part 2 of such budget shall contain an estimate of the amount of money which will be needed for the administrative expenses of the county department, in carrying out the provisions of this act and of the several acts which the county department is authorized and required to administer, other than the amounts of money requested in Part 1 of such budget."

2. Ind.Code 17–1–24–18.3 provides:
   "On or before July 1, annually, each officer, board, commission and agency within the purview of this chapter shall file a statement, on a form prescribed by the state board of accounts, in the office of the county auditor showing in detail the positions for which salaries will be requested in the annual budget for the ensuing year and the amount or rate of salary proposed to be paid for each position, both as to full time and part time employment."

3. Ind.Code 12–1–11–3 provides:
   "(a) In the month of September, 1936, and annually thereafter, at the time provided by law, the county council shall make such appropriations out of the county welfare fund, based on the budget as submitted, as may be necessary to maintain the welfare services of the county and to defray the cost of the administration of such services, as hereinbefore provided, for the ensuing fiscal year, and shall, at the same time, levy a tax in an amount necessary to produce the funds so appropriated."

current classes and letter designations. However, it awarded merit salary increases to the majority of its employees by listing annual salaries in amounts which were consistent with the next highest letter-steps within the classes. Although none of the merit increases was effective at the time (they would accrue over the course of 1979 in the months of January, April, July, and October), the statement calculated the entire year upon the higher salary rates.

On September 7, 1978, pursuant to statutory authority,[4] the Council adopted a salary ordinance which did not provide for the prospective merit increases, but held the employees to their present classes and letter designations. The Council also adjusted the number of employees. Thus, the salary ordinance provided $419,179 rather than $462,196. The total appropriation was, of course, reduced by the same amount.

The Department appealed to the State Board of Tax Commissioners (Commissioners).[5] On January 5, 1979, the Commissioners decided in favor of the Department and ordered the Council to appropriate $463,276 for the 100 Personal Services Account.

On March 28, 1979, the Department submitted another statement of proposed salaries. The Council again struck the merit increases and refused to establish four new positions which the Department had requested. The Council thus held the employees to their current, that was, 1978, salary levels; the ordinance provided only $381,948.

The Department filed its action for mandamus on April 4, 1979, requesting that the Council be ordered to appropriate $463,276 to the 100 Personal Services Account and to amend the salary ordinance so as to provide sufficient funds to effectuate the merit increases at the appropriate times. On May 22, 1979, the court entertained cross-motions for summary judgment. The parties stipulated most of the facts necessary for the disposition of the case. Evidence submitted at the hearing was largely documentary and undisputed; the issue was one of statutory interpretation. On June 7, 1979, the court entered a declaratory judgment which determined the jural relations existing among the parties. The court declared that merit increases must be awarded when they are properly recommended and approved by the Indiana State Personnel Division (Division). In effect, the Council was not obligated to adopt a salary ordinance which provided sufficient funds to cover prospective merit increases. However, once

4. Ind.Code 17–1–24–18.3 provides:
   "The county council shall, at its prescribed annual meeting beginning on the first Tuesday after the first Monday in September of each year, after consideration of all recommendations and statements concerning salaries and number of employees from the board of county commissioners, *adopt a separate ordinance fixing the salaries of all officers, deputies, assistants and employees within the purview of this chapter.* The county council shall likewise in the same ordinance fix the number of deputies, assistants and other employees for each office, department, commission or agency, except part time and hourly rated employees for which employment shall be limited only by the rates of salaries fixed and the funds appropriated therefor. In the fixing of salaries, the council shall observe all minimums provided by law or as provided by all applicable rules and regulations." (Emphasis added.)

5. Ind.Code 12–1–11–4 provides:
   "If Part 1 of Part 2 of the budget, or any item or items thereof as submitted by the county board of public welfare, or the tax levy as recommended by the county board of public welfare, and as certified by the state department to the county department, as provided in section ninety-nine of this act, be reduced by the county council or the county board of tax adjustment in an amount which, in the judgment of the county board of public welfare or the state board of public welfare, will not afford sufficient funds to maintain the county welfare services adequately, the county board of public welfare, on its own initiative, may, and, on request in writing from the state board of public welfare, shall appeal therefrom to the state board of tax commissioners. . . . The order of the state board of tax commissioners shall be final and the levy as fixed by the state board of tax commissioners shall be the only levy or rate upon which such taxes shall be collected. No proposed tax levy to provide funds for a proposed budget for county welfare purposes, shall be reduced unless the budget item or items affected thereby shall be adjusted accordingly."

the increases were awarded, the Council would be obligated to amend the salary ordinance to provide adequate funds. No mention was made of the 100 Personal Services Account appropriation.

On June 12, 1979, the Division approved the Department's recommendations for merit increases as follows: January 1 (retroactively)—16 employees; April 1 (retroactively)—4 employees; July 1 (timely)—2 employees; October 1 (proactively)—5 employees. On June 26, 1979, the Department submitted its final statement. The statement provided a worksheet upon which the Department had computed the salaries paid and merit increases retroactively owing as of July 2. The second six months' costs were estimated upon variable rates; as of this date, all merit increases, except those due in October, were in effect. The statement requested $398,637 for 36 employees.

On July 14, 1979, the Council passed its salary ordinance, again denying the merit increases. The ordinance was set at $394,930 for 35 employees, one position having been deleted.

The Department moved for a contempt citation. A show cause order was issued at about the same time as the Council filed its motion to correct errors. The citation has been stayed and the court has ordered that $12,000 be carried over into the 100 Personal Services Account for 1980 pending the result of this appeal.

## ISSUES

This appeal raises only one issue for consideration:[6] Whether the trial court erred

in declaring that the Council is statutorily required to amend its salary ordinance to provide sufficient funds for approved merit salary increases.

## DISCUSSION AND DECISION

■ In the case at bar we are required to apply three bodies of statutory law to a given set of facts: the State Personnel Act, Ind.Code 4–15–2–1 *et seq.*, that portion of the Welfare Act of 1936 which establishes the State Department of Public Welfare, Ind.Code 12–1–2–1 *et seq.*, and those statutes governing the powers, duties, and organization of county councils, Ind.Code 17–1–24–1 *et seq.* Here, as in *County Council of Bartholomew County v. Department of Public Welfare of Bartholomew County,* (1980) Ind.App., 400 N.E.2d 1187, we state:

"Our methodology in the resolution of this appeal is statutory construction. We have the advantage of a set of well-settled principles in construing statutes, albeit there is not total consistency in these rules. Basic to these rules is that in construing a statute we must give effect to the intention of the legislature which enacted the law. *Gonser v. Board of Commissioners for Owen County,* (1978) Ind.App., 378 N.E.2d 425. It is also a familiar rule of statutory construction that two statutes dealing with a common subject matter will be read in *pari materia* and so as to harmonize and give effect to each. *Schrenker v. Clifford,* (1979) Ind., 387 N.E.2d 59; *State ex rel. Eastern Pulaski Community School Corp. v. Pula-*

---

**6.** In its motion to correct errors, and on appeal, the Council presented two other specifications of error. However, as the trial court noted in its denial, the Council's motion raised several new defenses and factual questions which were not presented to the court when the parties filed their stipulations and argued their cases at the hearing. We do not consider issues which have not been properly presented to the trial court for determination. *Lutheran Hospital of Fort Wayne, Inc. v. Department of Public Welfare of Allen County,* (1979) Ind.App., 397 N.E.2d 638; *Yerke v. Batman,* (1978) Ind.App., 376 N.E.2d 1211. We would remark that Judge White's opinion in *Indiana Personnel Board v. Galloway,* (1976) Ind.App., 342 N.E.2d 903, is

dispositive of the "unlawful delegation of taxing authority" issue. There, Judge White stated:

"Furthermore, the statutes which delegate local taxing, appropriating, and other powers to county councils [§§ 17–1–24–1 through 17–1–24–50] indicate throughout, and especially in § 17–1–24–18.2, that these powers are subject to the superior power of the general assembly to provide directly and indirectly through administrative agencies it establishes, minimum standards of local funding which the council must implement by exercise of its taxing and appropriating power."

342 N.E.2d at 908.

*ski Circuit Court,* (1975) 264 Ind. 37, 338 N.E.2d 634; 2 *Sutherland Statutory Construction,* § 5201 (3d ed. 1943).

There is also a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. *Schrenker, supra* at 60; *Economy Oil Corp. v. Indiana Department of State Revenue,* (1974) 162 Ind.App. 658, 321 N.E.2d 215. Where the statutes cannot be harmonized or reconciled, some cases emphasize that the more specific or detailed statute should prevail over the more general statute; others emphasize that the the most recent expression of the legislature shall prevail over older ones. *See State ex rel. Eastern Pulaski Community School Corp., supra; State ex rel. State Board of Tax Commissioners v. Daviess Circuit Court,* (1967) 249 Ind. 580, 230 N.E.2d 761; *Gonser, supra; Economy Oil, supra.* It is also recognized that general statutes or rules do not overrule or supersede specific provisions in statutes or rules unless it is clear there was an intent to do so. *State ex rel. Dedelow v. Lake County Court,* (1978) Ind., 383 N.E.2d 284. Also, the repeal of statutes by implication is not a favored result in this State and such a repeal will occur only if it is clear that the statutes are so inconsistent that it must be assumed the legislature did not intend that both remain in force. *Schrenker, supra* at 60, 61."

As noted above, the primary issue is the authority to fix salaries of the Department's employees. Ind.Code 17–1–24–18.1 seems to grant such authority to the Council:

"The authority to fix salaries of officers, deputies, assistants and employees whose salaries are payable from any county fund, except as hereinafter provided, and subject to the provisions of this chapter, is hereby vested in the county council.

\* \* \* \* \* \*

The county council shall establish the compensation of the director of county welfare and other officers and employees of the county department of public welfare within the salary ranges of the pay plan adopted by the Indiana personnel board and approved by the state budget committee pursuant to IC 1971, 12–1–3 and IC 1971, 4–15–2."

*See* Ind.Code 17–1–24–18.3. Ind.Code 12–1–3–7 seems to grant such authority to the Department through its director:

"The county director, with the approval of the county board, shall appoint from eligible lists established by the Indiana personnel board such number of assistants as he and the county board may determine to be necessary to administer the welfare activities within the county and to perform all other duties required of the department, and shall fix the compensation of such assistants within the salary ranges of the pay plan adopted by the Indiana personnel board and approved by the state budget committee and within the lawfully established appropriations: . . . "

However, as both statutes indicate, the State Personnel Board (Board) which adopts the classification and pay plans governing state service employees also has significant say in the matter. Ind.Code 4–15–2–5 *et seq.*

The State Personnel Act was enacted for the purposes of increasing governmental quality and efficiency and providing any person a fair and equal opportunity to enter the state service and to advance according to fair standards of accomplishment based on merit principles.[7] Ind.Code 4–15–2–1.

---

**7.** Indiana accepted the burdens and benefits of the federal Social Security Act by adopting Ind.Code 12–1–2–12 and 12–1–2–13. In order to comply with federal regulations, the legislature placed all county welfare department authorities under the State Personnel Act. Ind. Code 4–15–2–43 provides:

"Notwithstanding any provision of this act . . . , there is hereby adopted such federal or state merit system, or systems, as the federal government may have established or approved, or may establish, as a condition to federal aid for any purpose to which any part of the state service as herein defined per-

The Board is required to adopt classification and pay plans. Ind.Code 4–15–2–5. The pay plan is required to provide a detailed system for personnel administration on a scientific and merit basis, including standards of performance and output. Ind. Code 4–15–2–5, 4–15–2–27. The pay plan must also provide, for each class of positions, minimum and maximum rates of pay, and such intermediate rates of pay as the Board considers necessary or equitable. Ind.Code 4–15–2–11.

State service employees are classified by a five-digit number. For example, the Department's caseworkers are designated by the number 14025. The number 14025 falls within the general class of professional, administrative, and technological (PAT) employees (numbered anywhere from 10001 to 35996). The final digit indicates the skill level within the general class—in this example, level V. PAT employees in skill level V have a salary range of $11,580 to $15,108 depending upon their letter-step (A–G) within the skill level. Employees are classified by the Board, at least insofar as they are numerically designated. Thus a 14025 caseworker *must* be paid within the PAT V salary range.

Generally, a new employee receives the minimum salary for the position within the particular class, e. g. PAT V A. 30 IAC 1–4–2(B). Merit or step increases within the established pay range (A–B, B–C, etc.) "shall be dependent upon specific written recommendation and shall be based upon acceptable standards of performance. . ." 30 IAC 1–4–3(D); Ind.Code 4–15–2–27. According to this classification and pay plan, the minimum salary is PAT V A at $11,580, while the maximum salary is PAT V G at $15,108.

█ There can be no doubt that the Department's employees must be paid within the range of salaries established by the Division. The Council contends, however, that it is only required to pay the *minimum* salary within the classification—that is, the

A letter-step. It cites as authority Ind. Code 17–1–24–18.2 which provides:

"For the purposes of this chapter a minimum salary shall be any minimum salary amount fixed by law, or the minimum salary specified in a minimum/maximum salary bracket fixed by law and permitted or required to be paid to officers and employees included within the purview of this chapter. County councils shall have the authority to approve the increase of any minimum and other salaries pursuant to the procedures hereinafter set forth."

In fact, a number of the Department's employees are on higher letter-steps within their classes and skill ranges than A. The Council does not desire to pay them less. However, the Council does assert that it is not required to fund any merit increases above A. Thus, the Council asserts that it may, at the very least, hold employees at their current levels. This is incorrect. To allow the Council to hamper the efficient administration and frustrate the effectuation of the purposes of the State Personnel Act, and thereby to jeopardize this state's status under the federal Social Security Act, could not have been the intent of the Legislature. *See Heyne v. Mabrey*, (1978) Ind.App., 383 N.E.2d 464; *County Department of Public Welfare of Marion County v. City-County Council of Marion County*, (1975) 167 Ind.App. 334, 338 N.E.2d 656. A properly recommended and approved merit salary increase is an intermediate rate of pay established by the Board to implement the federally required merit system. Thus, although the Council may require a new caseworker to be hired in at level A, when that caseworker becomes eligible and is recommended and approved for a merit salary increase to letter-step B, the salary increase must be granted. Ind.Code 17–1–24–18.3 states:

"The county council shall . . . adopt a separate ordinance fixing the salaries of all officers, deputies, assistants

tains; and it is hereby further provided that this act shall be administered in harmony

with such federally established or approved merit system, or systems . . . .."

and employees within the purview of this chapter. . . . In the fixing of salaries, the council shall observe all minimums provided by law *or as provided by all applicable rules and regulations.*" (Emphasis added.)

Thus, a state service employee who moves from the A to the B level can no longer be paid the minimum salary in this classification. For all intents and purposes, that employee's minimum salary is, according to the applicable merit rules and regulations, a B-level salary.

In the case at bar, the Department requested but did not receive a $463,276 appropriation and a $462,196 ordinance. The Department appealed the appropriation, the Board decided in the Department's favor, and an order fixing the appropriation at $463,276 was issued. This order of the Board was final and the levy as fixed by the Board was the only rate upon which the county taxes should have been collected. Ind.Code 12–1–11–14. With regard to the salary ordinance, we agree with the trial court's judgment that the Council was not required to adopt an ordinance which provided funds for prospective merit salary increases. However, at such time as the merit increases are approved and become effective, and the "minimum" salary levels of the Department's employees are thereby increased, the Council is statutorily obligated to adopt or amend a salary ordinance to provide the Department with these funds. Ind.Code 17–1–24–18.3 states:

"The salaries of other officers, deputies, assistants and employees or the number of each may be changed at any time pursuant to application of the affected officer, department, commission or agency and upon the affirmative vote of as many councilmen as is required by law to pass an ordinance of emergency appropriations."

The trial court declared:

"If the Director of the Monroe County Welfare Department and the Monroe County Welfare Board recommend a specific employee for a merit salary increase as provided for the State Personnel Act, and that recommendation is appropriately forwarded to the State Personnel Division which also recommends that specific employee for a merit salary increase, and if there are sufficient levied appropriated funds in the County Welfare Department's 100 Personal Services Account, the Monroe County Council, upon request by the County Welfare Director, shall amend the County Welfare Department's salary ordinance to reflect the specific employee's merit salary increase."

We affirm.[8]

ROBERTSON, P. J., and RATLIFF, J., concur.

---

8. No appeal is taken from the trial court's findings with regard to the authority to fix the number of the Department's employees. Thus, we are not obliged to address the issue. However, we refer the parties to our decision in *County Council of Bartholomew County, supra.*