**COUNTY DEPARTMENT OF PUBLIC WELFARE OF LAKE COUNTY, Plaintiff,**

v.

**Wayne A. STANTON, in his capacity as Director of the Indiana State Department of Public Welfare; Charles Loos, in his capacity as Auditor of the State of Indiana; Julian Riddlen, in his capacity as Treasurer of the State of Indiana, and the State of Indiana Department of Public Welfare, Defendants.**

No. H 80–95.

United States District Court,
N. D. Indiana,
Hammond Division.

July 29, 1982.

As Amended Sept. 2, 1982.

Thomas C. Ridgely, Gary, Ind., for plaintiff.

Gordon E. White, Jr., Gary L. Shaw, Deputy Attys. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM DECISION AND JUDGMENT

KANNE, District Judge.

This is a declaratory judgment action under 28 U.S.C. §§ 2201 and 2202 in which the County Department of Public Welfare of Lake County requests prospective injunctive relief and payment from the Indiana Department of Public Welfare in the sum of Seven Million Four Hundred Seventy Thousand Four Hundred Ninety-two Dollars ($7,470,492.00) for nonreimbursed allowance for administrative expenses.

This case is now before the Court on defendant's Motion to Dismiss Plaintiff's Amended Complaint[1] and Supplemental Motion to Dismiss Plaintiff's Amended Complaint and Request to Stay Discovery. Plaintiff has failed to file a response to these motions.

The allegations in plaintiff's amended complaint are as follows. The Aid for Families with Dependent Children program of the Social Security Act, 42 U.S.C. § 601 *et seq.*, has among its provisions that the federal government will reimburse states for a portion of their costs in administering the aid program. Pursuant to an act of the Indiana Legislature, Ind.Code § 12–1–18–2, "... The state department shall also distribute among the several counties forty percent of the administrative allowance received from federal funds for county administrative expenses in providing for assistance to dependent children." The remaining sixty percent of the federal funds are retained in the Aid to Dependent Children account of the state general fund. The state department itself also receives federal funds for reimbursement of its administrative expenses. The plaintiff argues that the reimbursement scheme set up by Ind.Code § 12–1–18–2 is unconstitutional for two reasons. First, it violates the supremacy clause, U.S.Const. Art. 6, cl. 2., because it conflicts with the intent of the reimbursement provisions of the Social Security Act. Second, it violates the equal protection clause, U.S.Const.Amend. 14, because it creates two distinct classes of employees, those subject to one hundred percent reimbursement and those subject to only forty percent reimbursement.[2]

## I. JURISDICTION

The defendants urge that this Court lacks subject-matter jurisdiction. The plaintiff's complaint lists several jurisdictional bases including 28 U.S.C. §§ 1331(a); 1343(4);

---

1. On September 17, 1980, plaintiff filed a Motion for Leave to File Amended Complaint. Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend his pleading once as a matter of course at anytime before a responsive pleading is served. For purposes of Rule 15(a) a motion to dismiss is not a responsive pleading. *Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1974), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1975). Accordingly, the motion to amend is unnecessary and the Court need not rule on it.

2. After comparing plaintiff's initial and amended complaints it is not clear that plaintiff, in amending his complaint, did not intend to abandon its claim that Ind.Code § 12–1–18–2 violates the supremacy clause. Although it appears misplaced (the rest of plaintiff's amended complaint refers only to the equal protection claim) paragraph 26 of the amended complaint does raise the supremacy clause issue. Therefore, the Court will consider plaintiff's supremacy clause claim to still be before it.

2201; 2202. Since this Court finds jurisdiction of the plaintiff's claims under 28 U.S.C. § 1331(a), there is no need to address the other provisions.

■ At the time this action was initiated, 28 U.S.C. § 1331(a) granted original jurisdiction to district courts over matters arising under the laws of the United States where the value of the controversy exceeded $10,000.00. The test to determine if an action arises under the laws of the United States is whether the outcome of the controversy depends on an interpretation of a federal law. *Local Division 519, Amalgamated Transit Union, AFL–CIO v. LaCross Municipal Transit Utility*, 585 F.2d 1340 (7th Cir. 1978). In actions seeking a declaratory judgment, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Both of these jurisdictional requirements are met in the present case.

■ The outcome of this case rests on the interpretation of a federal law, i.e., the Social Security Act. This Court must determine the purpose and intent of the federal reimbursement provisions of that Act in order to decide if the state law at issue conflicts with those provisions and thereby violates the supremacy clause. Since the result of this matter depends on an interpretation of a federal law, this matter arises under federal law.

■ This case also meets the amount in controversy. The prospective injunction requested certainly has a value of greater than $10,000.00. The plaintiff alleged that over seven million dollars worth of past payments, accruing over a period of six years, are owed to it.[3] This would indicate that an injunction with regard to future payments is worth a great deal more than $10,000.00. Since this action arises under federal law and has an amount in controversy exceeding $10,000.00, jurisdiction rests with this Court under 28 U.S.C. § 1331(a).

## II. FAILURE TO STATE A CLAIM

■ Defendants next argue that the plaintiff's equal protection claim must be dismissed for failure to state a claim on which relief can be granted. The equal protection clause has no application to acts of a state against its own political subdivisions because such entities have no privileges and immunities against the state. *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1932); *Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1922); *Triplett v. Tiemann*, 302 F.Supp. 1239 (D.Neb.1969). In *Triplett*, several local school districts sued the State Board of Education. The school districts attacked a state funding statute and sought to have it declared unconstitutional under the supremacy clause and the equal protection clause. Although the court decided the supremacy clause claim, it held that the school districts could not avail themselves of the guarantees in the equal protection clause because they were not legally subject to injury under that clause. In the present case, the plaintiff admits that it is a creation of the Indiana Legislature. As such, it may not use the equal protection provision to combat acts of the State of Indiana which it claims adversely affect it. That

---

**3.** Defendants also move for dismissal of the plaintiff's claim for retroactive payment of the federal reimbursement funds. The Eleventh Amendment bars a federal court from ordering the retroactive payment of funds from a state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This is to assure that federal courts will not interfere with a state's public policy and internal affairs. *Blake v. Kline*, 612 F.2d 718 (3rd Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112. Consistent with this purpose,

however, a federal court may enjoin a state to conform its future actions to federal law, even though the injunction may have a collateral effect on the state treasury. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Since there is no question in this case that the seven million dollars requested by the plaintiff would not only come from the state treasury, but would also have to be paid retroactively, the plaintiff's claim for such funds is barred by the Eleventh Amendment.

portion of the plaintiff's complaint seeking relief under the equal protection clause must be dismissed.

## III. STANDING

County departments of public welfare have a unique and frequently confusing position in Indiana. In addition to being formed as local governmental units (Ind. Code § 12–1–3–1); the county departments of public welfare are also subordinate agencies of the state department of public welfare (*See* Ind.Code §§ 12–1–2–3 and 12–1–3–4). This troublesome issue has been a recurring factor in litigation in the state courts of Indiana.[4]

The matter before the Court can be viewed from two aspects: (1) a local governmental unit's dispute with the action of a department of state government; the effect being a political subdivision challenging the constitutionality of state action; or, (2) an intramural dispute between a subordinate local agency and its administrative and supervisory ˉsuperior; in effect, the public welfare system bringing suit against itself on constitutional grounds.

The nature of the relationship between the county department of public welfare and the state department of public welfare supports the second view. However, neither view of plaintiff's position gives it standing to bring this suit.

■ With regard to the first view, while it has been called into question in recent years[5] the general rule is that a political

subdivision of a state does not have standing to challenge a state statute on constitutional grounds. In *City of Safety Harbor v. Birchfield*, 529 F.2d 1251 (5th Cir. 1976) the court stated:

In contrast to private individuals and entities, municipal corporations have repeatedly been denied the right to challenge state legislation allegedly violative of the Federal Constitution. *Williams v. Mayor and City Council of Baltimore, supra; Pawhuska v. Pawhuska Oil & Gas Co.,* 250 U.S. 394, 398, 39 S.Ct. 526, 528, 63 L.Ed. 1054, 1057 (1919) . . . ; *City of New Orleans v. New Orleans Water-Works Co.,* 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891).

*See also City of New York v. Richardson,* 473 F.2d 923 (2nd Cir. 1973), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002; *Aguayo v. Richardson,* 473 F.2d 1090, *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974).

The reason for the rule is that a municipality or any other unit of local government is a creature of the state and receives all its power from the state.[6] *City of Trenton v. New Jersey,* 262 U.S. 182, 187, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923); *Hunter v. Pittsburgh,* 207 U.S. 161, 178–79, 28 S.Ct. 40, 46–47, 52 L.Ed. 151 (1907).

Turning to the second view, in which the county department of welfare is seen as a part of the state apparatus, an examination of some of the statutes which govern their relationship will illustrate the control vested by the legislature in the state depart-

---

4. *See County Department of Public Welfare of Lake County v. American Federation of State County and Municipal Employees,* Ind.App., 416 N.E.2d 153 (1981) (concurring opinion); *County Council of Monroe County v. State, ex rel. Monroe County Board of Public Welfare,* Ind.App., 402 N.E.2d 1285 (1980); *County Council of Bartholomew County v. Department of Public Welfare of Bartholomew County,* Ind. App., 400 N.E.2d 1187 (1980); *County Department of Public Welfare of Marion County v. City-County Council of Marion County,* 167 Ind.App. 334, 338 N.E.2d 656 (1975); *Snyder v. Mouser,* 149 Ind.App. 334, 272 N.E.2d 627 (1971); *Watson v. Department of Public Welfare of Harrison County,* 130 Ind.App. 659, 165 N.E.2d 770 (1960).

5. *See City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980) (White and Marshall, JJ., dissenting from denial of certiorari); *Rogers v. Brockette,* 588 F.2d 1057 (5th Cir. 1979), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979).

6. Like many other states, Indiana now has given counties and municipalities home rule powers. Ind.Code § 36–1–3–1 *et seq.* But such powers are not given to any other units of local government. The various county or district departments of public welfare exist separately from the county governments. Ind.Code § 12–1–2–1 *et seq.*

ment of public welfare over the county departments of public welfare.

Ind.Code § 12–1–2–3 which sets forth the duties of the state department of public welfare provides, in part:

*The state department is hereby charged with the administration or supervision of all the public welfare activities of the state* as hereinafter provided. The state department:

(a) Shall administer or supervise... aid to dependent children...

(e) Shall provide services to county governments including *the organization and supervision of county departments* for effective administration of public welfare functions...

(f) May make such rules and regulations and take such action as may be deemed necessary or desirable to carry out the provisions of this act...

(m) May, under such rules and regulations as may be prescribed by the state department, *designate county departments to serve as agents of the state department in the performance of all public welfare activities in the county,* and when necessary in the opinion of the state board, provide all or any part of the local administrative cost and/or cost of assistance... [Emphasis added.]

Then Ind.Code § 12–1–3–4, dealing with duties of county departments, in relevant part, provides:

(a) Subject to the rules and regulations prescribed by the state department, the county department of public welfare shall administer:

(1) Assistance to dependent children in their own homes; ...

(6) Other welfare activities that are delegated to it by the state department of public welfare...

Further, Ind.Code § 12–1–11–2, which deals with the county department of public welfare's budget provides, in part:

... The state department shall examine the budget so submitted and the tax levy so recommended for the purpose of as-

certaining and determining whether, in the judgment of the state department, the appropriations requested, ... will be adequate to defray the expenses and obligations incurred by the county department in the payment of old-age assistance, assistance to dependent children, child welfare services and assistance for crippled children, for the fiscal year next ensuing, and whether the tax levy recommended will be sufficient to yield the amount of the appropriation... *The state department is hereby authorized to increase or decrease the amount ... of such budget,* or any item thereof, or to approve ... the budget and the several items thereof as compiled by the county board, and to recommend the increase or decrease of such tax levy or to approve the tax levy as recommended by the county board. [Emphasis added.]

■ The state department exercises authority over the employees of the county welfare departments. By virtue of Ind. Code § 4–15–2–3(a) all employees of the county welfare departments (including the director and other officers) are public service employees covered by the state merit system. Employees are appointed from eligibility lists maintained by the state personnel board. Ind.Code § 12–1–3–7. Once they are appointed, employees of the county welfare department are compensated, classified, promoted, disciplined and discharged according to the same standards and procedures in effect for employees of state agencies covered by the state personnel code. Ind.Code § 4–15–2–5 *et seq., County Council of Monroe County v. Monroe County Board of Public Welfare,* 402 N.E.2d 1285 (Ind.App.1980) (county council must provide funding for merit increases for employees of the county department of public welfare approved by the state personnel board.)

■ The state department also provides—by means of a reimbursement procedure—the funds that the county departments pay out as aid to families with dependent children. Ind.Code § 12–1–7–12.[7]

---

**7.** In *Mackey v. Stanton,* 586 F.2d 1126 (7th Cir. 1978), *cert. denied,* 444 U.S. 882, 100 S.Ct. 172,

■ From a review of the laws governing the administration of public welfare in Indiana, it is clear that the state department exercises administrative and supervisory authority, as well as operational control, over the county department.

The plaintiff is, by law, a creature of the state as a political subdivision, but it is also, by law, an agency of the state—a subordinate part of the state welfare system operating under the administrative supervision and control of the state department. Because of its nature, the plaintiff has no standing to assert its supremacy clause claim against the defendants.

Accordingly, this action must be, and the same is hereby, DISMISSED as to all defendants on all claims.

62 L.Ed.2d 112 (1979), the Seventh Circuit held that county departments of public welfare are unable to claim the state's Eleventh Amendment immunity because they are able, through the board of county commissioners and the county council, to borrow money that could be used for payment of a judgment. Ind.Code § 12–1–11–5 *et seq.* This limited fund raising ability is not enough to satisfy this court that the county departments of public welfare are sufficiently independent of the state department to confer upon them standing to challenge a state statute.