790 F.2d 500
 SOUTH MACOMB DISPOSAL AUTHORITY, Plaintiff-Appellant,
v.
TOWNSHIP OF WASHINGTON, et al., Defendants-Appellees.
 No. 85-1015.
 United States Court of Appeals,
Sixth Circuit.
 Submitted March 11, 1986.
Decided May 13, 1986.
 
 Roy W. Rogensues, Fraser, Mich., for plaintiff-appellant.
 Joseph Crystal, Southfield, Mich., for defendants-appellees.
 Before ENGEL, CONTIE and MILBURN, Circuit Judges.
 CONTIE, Circuit Judge.
 
 
 1
 South Macomb Disposal Authority (SMDA) appeals from the district court's dismissal of its complaint. The district court held that SMDA, a municipal corporation, was not a "person" under 42 U.S.C. Sec. 1983 for the purposes of instituting an action. We affirm the district court's dismissal of the appellant's complaint on the ground that SMDA had failed to state a cause of action under section 1983.
 
 I.
 
 2
 For purpose of review, we will assume the allegations in the complaint are true. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Lee v. Western Reserve Psychiatric Habilitation Center, 747 F.2d 1062 (6th Cir.1984).
 
 
 3
 The plaintiff-appellant, SMDA, is a municipal corporation[1] organized under the laws of Michigan. Mich.Comp.Laws Ann. Sec. 123.301. Its purpose is to dispose of solid waste generated by certain municipalities. The defendants are Washington Township, a general law township in Michigan, the supervisor of the Township and individual members of the Washington Township Planning Commission.
 
 
 4
 The controversy involved in this lawsuit arose in February 1982 when SMDA applied for a soil removal permit from the Township pursuant to a Township ordinance.[2] SMDA was notified by the Township's supervisor that it must first apply for a conditional use permit pursuant to the Township's zoning ordinance before the Township would approve a soil removal permit. SMDA complied with this request, and subsequently complied with a request to revise its application. In May 1982, the Planning Commission met, without informing SMDA, in order to discuss SMDA's conditional use application. The Commission decided to impose several conditions on SMDA before granting its conditional use application.[3]
 
 
 5
 In its complaint, filed June 17, 1982, SMDA claims that these conditions are not requirements under the zoning ordinance and were imposed out of animosity towards SMDA. SMDA further alleges that no other similarly situated landowner has been required to meet such conditions, and argues that imposing these conditions was arbitrary, unreasonable and discriminatory. SMDA reasons that the imposition of these conditions denied it due process and equal protection of the law, and that its right to mine soil and minerals was taken without just compensation. SMDA states that its cause of action arises under 42 U.S.C. Sec. 1983 in that the defendants, acting under color of law, deprived SMDA of its constitutionally protected rights. SMDA requested actual and punitive damages and injunctive relief. Although the permits were eventually granted, SMDA argues that the defendants' actions nonetheless constitute constitutional violations.
 
 
 6
 Upon the defendants' motion for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), the district court held that SMDA "as a municipal corporation is [not] a private person as contemplated by the Civil Rights Act"--in other words, that a municipal corporation could not be a plaintiff under 42 U.S.C. Sec. 1983. SMDA argues that it can be a section 1983 plaintiff and that its claim is a cognizable section 1983 claim.[4]
 
 II.
 42 U.S.C. Sec. 1983 provides:
 
 7
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 
 
 8
 (Emphasis added).[5]
 
 
 9
 The term "person" appears twice in the statute, one relating to proper plaintiffs under the statute, the other relating to proper defendants. In Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "municipalities and other local government units" were "persons" under section 1983, id. at 690, 98 S.Ct. at 2035, and could "be sued for constitutional deprivations visited pursuant to governmental 'custom' ...," id. at 690-91, 98 S.Ct. at 2035-36, thereby overruling its previous decision on this question. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In reaching the decision that a municipal corporation was a proper defendant under section 1983, the Court relied on an Act of Congress which stated that "in all acts hereafter passed ... the word 'person' may extend to bodies politic and corporate ... unless the context shows that such words were intended to be used in a more limited sense." Id., 436 U.S. at 688, 98 S.Ct. at 2034, quoting Act of Feb. 25, 1871, Sec. 2, 16 Stat. 431. The Court reasoned that in 1871, when the predecessor statute to section 1983 was enacted,[6] municipal corporations "were included within the phrase 'bodies politic and corporate' and, accordingly, the 'plain meaning' of Sec. 1 is that local government bodies were to be included within the ambit of persons who could be sued under Sec. 1 of the Civil Rights Act." 436 U.S. at 688-89, 98 S.Ct. at 2034-35. Since a municipal corporation is a "person" under section 1983 for purposes of being sued, a threshold question in this case is whether a municipal corporation qualifies as a proper plaintiff by being an "other person within the jurisdiction" of the United States.[7]
 
 
 10
 A private corporation is clearly a "person" within the meaning of the Equal Protection and Due Process Clauses, Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936); Metropolitan Life Insurance Co. v. Ward, --- U.S. ----, 105 S.Ct. 1676, 1683 n. 9, 84 L.Ed.2d 751 (1985), and within the meaning of section 1983 to constitute a proper plaintiff. Fulton Market Cold Storage Co. v. Cullerton, 582 F.2d 1071, 1079 (7th Cir.1978), cert. denied, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979); Advocates for the Arts v. Thomson, 532 F.2d 792, 794 (1st Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976); Borreca v. Fasi, 369 F.Supp. 906, 911 (D.Hawaii 1974).
 
 
 11
 The Fifth Circuit has held, however, that a municipal corporation was not a proper plaintiff because it was not a "person" within the meaning of section 1983. City of Safety Harbor v. Birchfield, 529 F.2d 1251 (5th Cir.1976). In reaching this conclusion the court did not have the benefit of the Monell decision and partially relied on the premise that this conclusion "constitutes a proper extension of the reasoning of recent Supreme Court cases which have established that a municipality is not a "person" within the meaning of 42 U.S.C. Sec. 1983 when the municipality is sued as a defendant." Id. at 1253 (citing City of Kenosha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 2226, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 699-700, 93 S.Ct. 1785, 1790-91, 36 L.Ed.2d 596 (1973); and Monroe v. Pape, 365 U.S. 167, 187-92, 81 S.Ct. 473, 484-86, 5 L.Ed.2d 492 (1961)). We are of the opinion that in light of Monell, it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a "person" within one clause of section 1983, but not a "person" within another clause of the same statute.[8] Rather, we believe the outcome in this case is dictated by a different body of law, which analyzes whether the appellant, as a municipal corporation, may assert constitutional claims against its creating state, or political subdivisions thereof, and, if so, in what context may it assert such claims. See, e.g., Appling County v. Municipal Electric Authority of Georgia, 621 F.2d 1301, 1308 (5th Cir.) (per curiam), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980).
 
 
 12
 In order to state a cause of action under section 1983, a plaintiff must allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. Sec. 1983. Since corporations, both public and private, are not "citizens" within the meaning of the Fourteenth Amendment, see, e.g., Hague v. Committee for Industrial Organization, 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939); Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936) (private corporation); Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933) (municipal corporation), they can never assert the denial of privileges and immunities under section 1983. The issue before this court is actually quite narrow: whether a political subdivision of a state receives any protection from the Due Process or Equal Protection Clauses of the Fourteenth Amendment vis-a-vis another political subdivision of the same state. We believe this question is answered by analyzing the ramifications of the relationship between the plaintiff and the defendant, as well as the nature of the claim which is asserted.
 
 
 13
 There has long been a distinction between private and public corporations when it comes to a state's power to regulate. In Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), the Court explained that a state's power to regulate a private corporation was limited by the United States Constitution, whereas the Constitution did not act as a bar for the state's regulation of its own public corporations, even though the two corporations may provide identical services. The Court noted that a state's right to change a public corporation "is not founded on their being incorporated, but on their being the instrument of government, created for its purposes." Id. at 638, 4 L.Ed. 629. Being a subdivision of the state, the "State may withhold, grant or withdraw powers and privileges [from a municipality] as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to sovereign will." City of Trenton v. New Jersey, 262 U.S. 182, 187, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1923).
 
 
 14
 The nature of the relationship between a public corporation and its creating state has led the Court to conclude that a municipal corporation "cannot invoke the protection of the Fourteenth Amendment" against its own state, City of Newark v. New Jersey, 262 U.S. 192, 196, 43 S.Ct. 539, 540, 67 L.Ed. 943 (1923), and is prevented from attacking the constitutionality of state legislation on the grounds that its own rights have been impaired. See, e.g., City of New Orleans v. New Orleans Water Works Co., 142 U.S. 79, 89-91, 12 S.Ct. 142, 146-47, 35 L.Ed. 943 (1891); Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); City of Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923).
 
 
 15
 There may be occasions in which a political subdivision is not prevented, by virtue of its status as a subdivision of the state, from challenging the constitutionality of state legislation. See, e.g., Rogers v. Brockette, 588 F.2d 1057 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979) (local school district had capacity to challenge constitutionality of state statute under supremacy clause);[9] San Diego Unified Port District v. Gianturco, 457 F.Supp. 283 (S.D.Cal.1978), aff'd, 651 F.2d 1306 (9th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (political subdivision can challenge constitutionality of state legislation under Supremacy clause);[10] see also Gomillion v. Lightfoot, 364 U.S. 339, 342-47, 81 S.Ct. 125, 127-30, 5 L.Ed.2d 110 (1960) (state's power to change municipality's boundaries is not absolute and is limited by the Constitution); City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 449 U.S. 1039, 1041-42, 101 S.Ct. 619, 620-21, 66 L.Ed.2d 502 (1980) (White, J., dissenting from denial of certiorari). However, in the instant case, SMDA seeks to invoke the protections of the Fourteenth Amendment, and a municipal corporation, in its own right, receives no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state. City of Moore v. Atchison, Topeka & Santa Fe Railway Co., 699 F.2d 507, 511-12 (10th Cir.1983); Delta Special School District No. 5 v. State Board of Education, 745 F.2d 532, 533 (8th Cir.1984); Appling County v. Municipal Electric Authority of Georgia, 621 F.2d 1301, 1308 (5th Cir.) (per curiam), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980); City of New York v. Richardson, 473 F.2d 923, 929 (2d Cir.), cert. denied, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); Aguayo v. Richardson, 473 F.2d 1090, 1100-01 (2d Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); County Department of Public Welfare of Lake County v. Stanton, 545 F.Supp. 239, 242-43 (N.D.Ind.1982). See also Schulz, The Effect of the Contract Clause and the Fourteenth Amendment upon the Power of the States to Control Municipal Corporations, 36 Mich.L.Rev. 385, 396-97 (1938) ("the contract, due process, and equal protection clauses of the national Constitution afford no protection whatever to municipal corporations, in their own right, as against the power of the states to control them") (original emphasis). These clauses have not been interpreted as limitations on the internal political organization of a state.
 
 
 16
 For the same reasons, a political subdivision of a state cannot challenge the constitutionality of another political subdivision's ordinance on due process and equal protection grounds. See, e.g., City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 233 (9th Cir.), cert. denied, 449 U.S. 1039, 66 L.Ed.2d 502 (1980); Village of Arlington Heights v. Regional Transportation Authority, 653 F.2d 1149, 1153 (7th Cir.1981); Town of Ball v. Rapides Parish Police Jury, 746 F.2d 1049, 1051 n. 1 (5th Cir.1984). Therefore, the Fourteenth Amendment simply does not prescribe guidelines and impose restrictions upon one political subdivision vis-a-vis another political subdivision. The relationship between the entities is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply.
 
 
 17
 The appellant argues that this rule does not apply when a municipal corporation is acting in a proprietary, versus a governmental, capacity, or when proprietary interests are at stake rather than matters of a state's internal political organization. SMDA argues that it is essentially like a private corporation and that property held by it in a proprietary capacity is protected by the Fourteenth Amendment.
 
 
 18
 The governmental-proprietary distinction owed its existence to the dual nature of the municipal corporation. On the one hand, the municipality was a corporate body, capable of performing the same "proprietary" functions as any private corporation.... On the other hand, the municipality was an arm of the State, ... acting in [a] "governmental" or "public" capacity....
 
 
 19
 Owen v. City of Independence, 445 U.S. 622, 644, 100 S.Ct. 1398, 1412, 63 L.Ed.2d 673 (1980) (analyzing municipal corporations' liability for torts).
 
 
 20
 The distinction between a municipal corporation acting in a governmental versus proprietary capacity--"the 'nongovernmental'-'governmental' quagmire that has long plagued the law of municipal corporations"--has largely been abandoned as "inherently unsound" in a variety of contexts. Indian Towing Co. v. United States, 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955). See also Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 1011-16, 83 L.Ed.2d 1016 (1985); Owen v. City of Independence, 445 U.S. 622, 644, 100 S.Ct. 1398, 1412, 63 L.Ed.2d 673 (1980); Massachusetts v. United States, 435 U.S. 444, 451, 98 S.Ct. 1153, 1159, 55 L.Ed.2d 403 (1978); State of New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946). See also City of Trenton v. New Jersey, 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923) (although earlier cases noted a distinction between property held in a proprietary versus governmental capacity, in "none of these cases was any power, right or property of a city or other political subdivision held to be protected by the contract clause or the Fourteenth Amendment"); Note, The Sovereign's Duty to Compensate for the Appropriation of Public Property, 67 Colum.L.Rev. 1083, 1091 (1967).
 
 
 21
 Further, there is no support for the conclusion that SMDA is acting in a proprietary capacity. The fact that SMDA provides the same services as a private corporation is of no significance in and of itself since the power of a state to change a municipal corporation, free of Fourteenth Amendment limitations, stems from the fact that municipal corporations are "the instruments of government, created for its purposes." Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 638, 4 L.Ed. 629 (1819). Under Michigan law for tort liability purposes, "a governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." Ross v. Consumers Power Co., 420 Mich. 567, 620, 363 N.W.2d 641 (1984) (per curiam). The power to incorporate an authority for waste disposal is authorized by statute in Michigan. A proprietary function is defined by statute as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees." Mich.Comp.Laws Ann. Sec. 691.1413. Since municipalities contract with a disposal authority to collect garbage and are authorized to raise taxes for that purpose, Mich.Comp.Laws Ann. Sec. 123.308, the activity of SMDA is an "activity normally supported by taxes or fees." Therefore, we hold that the distinction between property held in a governmental versus a proprietary capacity offers no relief to the appellant in this case.
 
 
 22
 Since SMDA asserts no rights that are protected by the "Constitution and laws," it has failed to state a claim under section 1983 and its complaint was properly dismissed.
 
 
 23
 Accordingly, the order of the district court is AFFIRMED.
 
 
 24
 ENGEL, Circuit Judge, concurring.
 
 
 25
 Although I generally agree with Judge Contie's excellent opinion, I depart from his logic in one respect. Judge Contie holds that, because the federal constitution affords no protection to municipal corporations as against the power of the state to control them, it must therefore follow that the constitution affords no protection to a municipal corporation as against the acts of another political subdivision of the same state. In my view, this conclusion does not necessarily follow as a matter of logic because, unlike the states, municipal corporations do not enjoy Eleventh Amendment immunity under Monell. See 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54. Nor do municipal corporations possess the powers of a state except insofar as those powers are conferred upon them by the state. In my view, the better reason is simply that the principle underlying the Dartmouth College case removes all such disputes from the purview of federal constitutional involvement, at least insofar as no other private constitutional rights may be involved such as in Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1961) (State may not redefine its municipal boundaries so as to deprive black citizens of their right to vote under the Fifteenth Amendment).
 
 
 26
 It was the distinction between public and private corporations which was so carefully delineated by the individual Justices in Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), which lay at the foundation of the primary ruling of that case, i.e., that while the federal government and its constitution had no direct concern in the matter of the internal relationships between a state and its politically organized subdivisions, including municipal or public corporations, as to private corporations the Supreme Court possess the right to adjudicate whether state law violated private rights. 17 U.S. at 628, 659-60, 668-70, 4 L.Ed. 629. The Court in Dartmouth College thus recognized the principle that because municipal bodies are essentially creatures of the state and because the state retains the inherent power to alter, change or even to abolish them in accordance with the state's constitution and laws made thereunder, the United States Constitution simply does not concern itself with matters of internal disagreements between a state and subdivisions created by it or between subdivisions created by the same state, for this area involves matters which the state is uniquely competent to resolve. As Chief Justice Marshall commented:
 
 
 27
 The general correctness of these observations cannot be controverted. That the framers of the constitution did not intend to restrain the states in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given to us, is not to be so construed, may be admitted.
 
 
 28
 17 U.S. at 628, 4 L.Ed. 629.
 
 
 29
 This principle has moved from the area of dicta in the Dartmouth College case to established federal constitutional law in a number of cases, including those cited by Judge Contie in his opinion. See Hunter v. City of Pittsburgh, 207 U.S. 161, 178-79, 28 S.Ct. 40, 46-47, 52 L.Ed. 151 (1907); see also Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933); City of Trenton v. New Jersey, 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923); City of Newark v. New Jersey, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923); cf. United States v. Wheeler, 435 U.S. 313, 319-21, 98 S.Ct. 1079, 1083-85, 55 L.Ed.2d 303 (1978). See generally 2 E. McQuillan, Municipal Corporations Secs. 4.17-.21 (3d rev.ed. 1979); 1 E. McQuillan, Municipal Corporations Secs. 1.39, 1.58, 2.08a (rev.ed. 1971). Moreover, this principle seems so well established that, in my opinion, it would be reading entirely too much into Monell to conceive that the Supreme Court intended in that opinion any change in such basic federal law. Even were it otherwise, one would have to say with great confidence that any intrusion on the part of the federal courts would only come as a last resort and in recognition of some other compelling constitutional principle.[1] Even then, such an intrusion would probably require either an exhaustion of state judicial remedies or the application of other established principles of abstention. See Alabama Public Service Comm'n. v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Railroad Comm'n. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 
 
 30
 In the ordinary case, this analysis will not lead to a different result, but it is, in my view, more satisfying in logic and more harmonious with the underlying principles of Dartmouth College and its progeny. In all other respects, I fully concur in Judge Contie's opinion.
 
 
 
 [1]
 Both parties assert that SMDA is a municipal corporation. SMDA was apparently incorporated pursuant to Mich.Comp.Laws Ann. Sec. 123.301, relating to garbage and rubbish disposal. This provision provides:
 Any 2 or more cities, villages or townships, hereinafter referred to as 'municipalities', or any combination thereof, may incorporate an authority for the purpose of the collection or disposal of garbage or rubbish, or both ... by the adoption of articles of incorporation, by the legislative body of each such municipality....
 Although not a municipality, SMDA is a municipal corporation in that it was incorporated by municipalities. It is also a political subdivision of the State of Michigan in that it was formed by municipalities. See Mich.Comp.Laws Ann. Sec. 691.1401(b).
 
 
 [2]
 SMDA had a leasehold interest in property located within the Township and owned by the Macomb County Road Commission. SMDA also operated a landfill in the Township within close proximity to the other parcel of land. SMDA requested the soil removal permit to excavate and remove topsoil, sand and clay to use in its sanitary landfill operation. SMDA alleges that the property had been used for sand and gravel mining in the past as had other land in the general vicinity
 
 
 [3]
 The conditions placed on SMDA included: (1) the final grade and reclamation plans must demonstrate the ability to support septic systems and a residential development; (2) a road belonging to Macomb County Road Commission must be paved to meet industrial strength specifications, even though SMDA did not intend to use this road; (3) the elimination of nuisances such as dust, noise, fumes, vibration, smoke and lights must be addressed; (4) the issue of public convenience and the amount and quality of material on the site must be addressed
 
 
 [4]
 The appellees raise several alternative grounds for upholding the district court's order. The appellees assert that the appellant's claims are moot because the permits were eventually granted. We do not believe the claims are moot, however, since the essence of the complaint alleges that SMDA was required to meet particular conditions that no other similarly situated landowner was required to meet. SMDA alleges that satisfying these conditions was costly in several respects. The fact that SMDA complied with these conditions and was granted the permits does not moot its claim of discriminatory treatment. Because of our disposition of this case, we decline to address the remainder of the appellee's arguments
 
 
 [5]
 The jurisdictional counterpart of Sec. 1983 is 28 U.S.C. Sec. 1343(3) which provides that district courts shall have jurisdiction over suits commenced by any person,
 [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States....
 
 
 [6]
 It has long been recognized that the predecessor statute to Sec. 1983 was Sec. 1 of the Civil Rights of 1871, which was derived from the Civil Rights Act of 1866. Mitchum v. Foster, 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972); Lynch v. Household Finance Corp., 405 U.S. 538, 543-45, 92 S.Ct. 1113, 1117-18, 31 L.Ed.2d 424 (1972)
 
 
 [7]
 Whether a plaintiff is a "person" within the meaning of section 1983 is a separate question from whether that plaintiff has standing to raise the claims alleged in its complaint. For instance, a shareholder is a "person" for section 1983 purposes, but may lack standing to sue under section 1983 on behalf of the corporation. Erlich v. Glasner, 418 F.2d 226 (9th Cir.1969). See also S. Nahmod, Civil Rights & Civil Liberties Litigation Sec. 1.07 (1979). Standing relates to whether the plaintiff has alleged a case or controversy under Article III and whether he is the person best able to assert the particular claim. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). Similarly, "it clearly does not follow from the fact that a 1983 plaintiff is an 'other person' that a 1983 cause of action is stated." S. Nahmod, supra, Sec. 1.07, at 8. Therefore, establishing whether a plaintiff is a "person" is a separate question from whether that plaintiff has standing and whether a cause of action has been alleged. Therefore, although other cases have spoken generally in terms of whether a plaintiff has standing to raise a particular claim, we believe separate inquiries are essential. See also infra note 9
 
 
 [8]
 In Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Court noted that Sec. 1983 was enacted to provide a new remedy to "private parties." In Safety Harbor, the Fifth Circuit concluded that a municipal corporation was not such a "private party" entitled to relief under Sec. 1983, 529 F.2d at 1255, as did the district court in the instant case. See also S. Nahmod, Civil Rights & Civil Liberties Litigation Sec. 1.07 (1979). After Monell, we do not believe that deciding whether a municipal corporation is or is not a "private party" necessarily poses the correct question, and we decline to focus on that inquiry
 
 
 [9]
 In Rogers v. Brockette, the Fifth Circuit stated:
 Our point is that Hunter [v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed.2d 151 (1970) ], Trenton [v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923) ], and allied cases are substantive holdings that the Constitution does not interfere in states' internal political organization. They are not decisions about a municipality's standing to sue its state.
 588 F.2d at 1069. See also Comment, Municipal Corporation Standing to Sue the State: Rogers v. Brockette, 93 Harv.L.Rev. 586, 590 (1980) ("the Fifth Circuit justifiably concluded that standing requirements should not preclude consideration of whether the Constitution allows Congress to impose additional limitations").
 
 
 [10]
 In San Diego Unified Port District, the court noted that although " '[p]olitical subdivisions of states have been held to lack constitutional rights against the creating state,' " 457 F.Supp. at 283 (quoting 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3531, at 234 (1975)), see 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3531.11 at 32 (1984), "[t]he Supremacy Clause does not confer a 'right' on any individual, but it does compose a general limitation on state power." 457 F.Supp. at 290. On appeal, the Ninth Circuit did not decide this issue, holding that it had jurisdiction over the case on other grounds. 651 F.2d at 1309-10 n. 7. However, the Ninth Circuit stated that "[w]hile there are broad dicta that a political subdivision may never sue its maker on constitutional grounds, ... we doubt that the rule is so broad." Id
 
 
 [1]
 Of course, this does not mean that Congress itself may not regulate, by appropriate legislation, the internal relationships of the states and their political subdivisions. Cf. Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. ----, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985); Rogers v. Brockette, 588 F.2d 1057, 1070 (5th Cir.1979). This kind of intrusion, however, is entirely different from that where, as here, a federal court is called upon, in the first instance, to adjudicate what is essentially an internal dispute between two local governmental entities, one of which is asserting unconstitutional conduct on the part of the other